**DATA MANAGEMENT, INC., Appellant,**

v.

**James H. GREENE and Richard Van Camp, Appellees.**

**No. S–2333.**

Supreme Court of Alaska.

July 1, 1988.

---

Cory R. Borgeson and John J. Burns, Birch, Horton, Bittner, Pestinger & Anderson, Fairbanks, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

### FACTS

Data Management, Inc. employed James H. Greene and Richard Van Camp. The parties signed a contract containing a covenant not to compete. The covenant provides that the employees will not compete with Data Management in Alaska for five years after termination.[1]

Shortly after the employees' termination from Data Management, the company filed suit against them for breach of the covenant not to compete. Data Management sought a preliminary injunction enjoining Greene and Van Camp from rendering computing services to twenty-one named individuals.[2] The preliminary injunction was granted.

Subsequently, the court granted summary judgment to Greene and Van Camp. The court found that the anti-competition covenant was not severable and was wholly unenforceable. Data Management appeals.

### DISCUSSION

We have not yet decided whether an overly broad covenant not to compete can be

Daniel T. Saluri, Fairbanks, for appellant.

1. The covenant not to compete stated:
   Inasmuch as the Employee will acquire or have access to information which is of a highly confidential and secret nature, it is agreed that for the terms of this agreement and for a period of 5 years after the termination of this agreement, Eployee [sic] will not, within the State of Alaska, directly or indirectly, perform any similar services for any other person or firm located within the State of Alaska, without first obtaining the written consent and approval of the Employer, and that Employee will not own, manage, operate or control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of any business similar to the type of business conducted by the Employer at the time of the termination of this contract or in competition with, direct-ly or indirectly, the business of the Employer. In the event of an actual or threatened breach by the Employee of the provisions of this paragraph, the Employer shall be entitled to an injunction restraining the Employee from owning, managing, operating, controling, [sic] being employed by, participating in, or being in any way so connected with any business similar to the type of business engaged in by the Employer. Nothing herein stated shall be construed as prohibiting the Employer from pursuing any other remedies available for such breach or threatened breach, including the recovery of damages from the Employee.

2. Data Management argues that this is a reasonable modification of the covenant not to compete, and that the trial court erred in not so modifying the covenant.

altered to render it legal. A survey of other jurisdictions reveals three different approaches.

The first approach is to hold that a covenant which is overbroad, and hence unconscionable, will not be enforced. This strict view was adopted by Arkansas in *Rector–Phillips–Morse, Inc. v. Vroman*, 253 Ark. 750, 489 S.W.2d 1 (1973). In that case, the court held that a three year covenant not to compete was too long. The court rejected the employer's request to alter the covenant from three years to six months. The court held, "our rule is that when a restriction such as this one is too far-reaching to be valid, the court will not make a new contract for the parties by reducing the restriction to a shorter time or to a smaller area." *Id.* 489 S.W.2d 1 at 4. Georgia has also adopted this position. *See, Rollins Protective Serv. Co. v. Palermo*, 249 Ga. 138, 287 S.E.2d 546, 549 (1982).

■ We do not favor this approach. The parties' contract is a bargain. One of the elements of that bargain is the covenant not to compete. As a general rule, courts should respect the rights of parties to enter into contracts, and should not interfere with their contractual relationships. There is a need to strike a balance between protecting the rights of parties to enter into contracts, and the need to protect parties from illegal contracts. Obliterating all overbroad covenants not to compete, regardless of their factual settings, is too mechanistic and may produce unduly harsh results. In response to objections like these, a second approach was developed.

■ The second approach is to hold that if words in an overbroad covenant not to compete can be deleted in such a way as to render it enforceable then the court may do so. This is the so-called "blue pencil" rule.

*See* Restatement of Contracts § 518 (1932). This position was adopted by Indiana in *Licocci v. Cardinal Associates, Inc.*, 432 N.E.2d 446, 452 (Ind.App.1982), *vacated on other grounds*, 445 N.E.2d 556 (Ind.1983) where the court stated, "if the covenant is clearly separated into parts and some parts are reasonable and others are not, the contract may be held divisible. The reasonable restrictions may then be enforced." *See also Capital Bakers v. Leary*, 20 Del.Ch. 407, 178 A. 648, 650 (1935); *General Bronze Corp. v. Schmeling*, 208 Wis. 565, 243 N.W. 469, 472 (1932).

This rule has been criticized as being too mechanical, in that it values the wording of the contract over its substance. For example, if a seller promised not to compete "anywhere in England," the whole provision would be void because the quoted clause cannot be narrowed by deleting any words. On the other hand, if the seller promised not to compete "in London or elsewhere in England," the covenant would be enforceable as to London because "elsewhere in England" could be "blue pencilled." The difference is merely semantic and we reject it.

■ The third approach, and the one we adopt, is to hold that if an overbroad covenant not to compete can be reasonably altered to render it enforceable, then the court shall do so unless it determines the covenant was not drafted in good faith. The burden of proving that the covenant was drafted in good faith is on the employer. This is the position taken in most United States jurisdictions [3] and by the Restatement (Second) of Contracts § 184(2) (1981).[4]

Ohio explained this approach in *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544 (1975).

3. *See Bess v. Bothman,* 257 N.W.2d 791 (Minn. 1977).

4. Restatement (Second) of Contracts § 184(2) (1981) states:

A court may treat only part of a term as unenforceable ... if the party who seeks to enforce the term obtained it in good faith and in accordance with reasonable standards of fair dealing.

The Restatement (Second) goes on to say, "this Section rejects the so-called 'blue pencil rule' of former § 518.... This rule is rejected because it is now contrary to the weight of authority and has been strongly criticized by scholarly writers." *Id.* at reporter's note (citations omitted).

[M]any courts have abandoned the "blue pencil" test in favor of a rule of "reasonableness" which permits courts to determine, on the basis of all available evidence, what restrictions would be reasonable between the parties. Essentially, this test differs from the "blue pencil" test only in the manner of modification allowed. It permits courts to fashion a contract reasonable between the parties, in accord with their intention at the time of contracting, and enables them to evaluate all the factors comprising "reasonableness" in the context of employee covenants.

Among the factors properly to be considered are: "[t]he absence or presence of limitations as to time and space, * * * whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment."

*Id.* at 546–47 (citations and footnote omitted).

This approach is consistent with U.C.C. § 2–302, as codified in Alaska under AS 45.02.302, which states:

(a) If the court as a matter of law finds the contract or a clause of the contract unconscionable at the time it was made, the court may refuse to enforce the contract, enforce the remainder of the contract without the unconsciona-ble clause, or so limit the application of an unconscionable clause as to avoid an unconscionable result.

(b) If it is claimed or appears to the court that the contract or any clause of the contract may be unconscionable, the parties shall be given a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

One criticism of this position is that employers are encouraged to overreach; if the covenant they draft is overbroad then the court redrafts it for them. While we recognize that the problem of overreaching exists, we think it can be overcome by stressing the good faith element of the test. The trial court must determine whether an employer has overreached willfully and, if so, the court should refuse to alter the covenant.

Accordingly, we REMAND this case to the trial court so it can determine whether Data Management acted in good faith, and if so, whether the covenant not to compete can be reasonably altered.[5]

---

5. Because it found the overbroad covenant not to compete was unenforceable, the trial court denied Data Management's request for the liquidated damages provided for in the contract. If, on remand, the trial court finds it appropriate to alter the covenant not to compete to render it enforceable, it should also address the issue of liquidated damages.