Hillsborough
Nos. 91-455
    91-489

CENTORR–VACUUM INDUSTRIES, INC. *& a.*

v.

GERARD H. LAVOIE *& a.*

June 17, 1992

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Thomas J. Donovan* and *Dawn B. Brown* on the brief, and *Mr. Donovan* orally), for the plaintiffs.

*Beasley & Ferber P.A.*, of Concord (*David H. Ferber* on the brief and orally), for the defendants.

JOHNSON, J.   The issue in this interlocutory appeal is whether the Superior Court (*Dalianis*, J.) erred in finding that the defendant,

Gerard H. Lavoie, did not violate an enforceable noncompetition covenant in his "Employment and Consulting Agreement" with the plaintiff, Centorr-Vacuum Industries, Inc. (Centorr). We remand to the superior court for further findings in accordance with this opinion.

The superior court made the following findings of fact. In 1962, the defendant founded Centorr, a manufacturer of sophisticated, high-temperature furnaces. The defendant is recognized worldwide as an expert in the specialized furnace industry, and, under his leadership, Centorr attained a twenty percent share of the world market.

On January 4, 1985, the defendant sold his entire interest in Centorr to Thermal Scientific, Inc., a multinational conglomerate, for approximately $4,900,000. Desiring to remain active in the industry, however, the defendant simultaneously entered into an employment agreement with Centorr whereby he would remain a highly-paid consultant. The agreement contained the following noncompetition covenant:

> "Section 3.6. *Noncompetition.* Lavoie shall not engage in any business activity in competition with the business then being conducted by [Centorr] at any place within the United States of America, Canada, or the United Kingdom, *whether directly or indirectly,* for his own account or as an employee, partner, officer, director, consultant or holder of more than 5% of the equity interest in any other person, firm, partnership or corporation for a period of three years after the termination for any reason or expiry of the Term hereof . . . ."

(Emphasis added.) Both the defendant and Centorr agree that this noncompetition covenant is currently enforceable.

The defendant, who by early 1990 had received over $614,700 from Centorr as a consultant, regretted selling his business and sought to reenter the specialized furnace industry. He began negotiating with Centorr for some arrangement whereby he could participate in the formation of a competing business without violating the terms of the noncompetition covenant. These negotiations soon broke down, and in March 1990, the defendant terminated his employment relationship with Centorr.

Shortly thereafter, the defendant met with Donald Lavoie (his younger brother and a former Centorr employee), Peter Sanborn (his son-in-law and a former Centorr employee), and several other individuals to discuss the formation of a corporation that would pro-

duce furnaces similar to those produced by Centorr. In October 1990, this entity was incorporated in New Hampshire as Materials Research Furnaces, Inc. (MRF). Donald Lavoie acquired thirty shares of MRF stock and became its first president. MRF has since entered the specialized furnace market in direct competition with Centorr.

The defendant provided significant financing for the start-up of MRF. He supplied various family members with $60,000 in loans and gifts so that they could acquire MRF stock. He also lent Donald Lavoie and Peter Sanborn approximately $240,000. They, in turn, lent this sum to MRF. Finally, the defendant expressed his willingness to lend money to other MRF employees for the purchase of stock.

The defendant is also associated with MRF through his interest in the Suncook Business Park. In 1989, he gave the land on which the business park is located to various family members. He then provided $2,000,000 in financing for the business park and, with the assistance of Donald Lavoie, supervised its construction. The defendant holds a mortgage on the property. Donald Lavoie and various other family members are the sole stockholders. The business park rents approximately one-third of its space to MRF for a sum of $4,000 per month. The remaining two-thirds of the complex is vacant. For the purposes of this appeal, we accept the defendant's contention that his relationship to the business park does not make him MRF's "landlord."

Centorr filed a petition with the superior court seeking injunctive relief and other damages. Citing the above relationship between the defendant and MRF as well as evidence that the defendant assisted MRF in various other ways, Centorr contended that the defendant violated the terms of the noncompetition covenant. The superior court found that the defendant did not violate the noncompetition covenant when he loaned money to family members associated with MRF. Relying on cases from New Hampshire and other jurisdictions, the court determined that "those cases where the Court has found a violation of a non-competition clause seem to involve direct actions taken by the covenantor on behalf of the competitive business." The defendant, it concluded, did not engage in "direct action" in loaning money to his family members because such assistance was merely "financial in nature." The court then found that the defendant's relationship to MRF as the mortgagee of the Suncook Business Park did not violate the noncompetition covenant because the business park "appears to have other business purposes than to just be a

home for MRF" and because "[n]o testimony was offered to suggest that a less than arms-length rent is being paid."

■ The interpretation of the terms of a noncompetition covenant is ultimately an issue for this court to decide. *See Technical Aid Corp. v. Allen*, 134 N.H. 1, 12, 591 A.2d 262, 268 (1991). Centorr requests that we overturn the superior court's findings on grounds that it misinterpreted the covenant. In requiring a showing that the defendant engaged in "direct action" with MRF, Centorr contends, the superior court ignored the covenant's explicit requirement that the defendant not compete "directly *or indirectly*" with Centorr.

■■ We agree that the superior court misinterpreted the non-competition covenant. "The law is well settled that the parties to a contract freely and openly entered into are bound by its terms, and a court cannot rewrite the contract unless the instrument fails to express the parties' intentions when they entered into the agreement." *Lowell v. U.S. Savings Bank*, 132 N.H. 719, 725, 572 A.2d 184, 188 (1990) (citations omitted). While the "direct action" test might be helpful where a noncompetition covenant is silent regarding an employee's obligations, its application to this case overlooks the defendant's promise, specifically set forth in the employment agreement, that he would not "indirectly" compete with Centorr.

■ On remand, the superior court should determine whether the defendant's actions "indirectly" assisted MRF in competing with Centorr. Because our caselaw looks upon contracts in restraint of trade with disfavor, courts normally construe noncompetition covenants narrowly. *See Home Gas Corp. v. Strafford Fuels, Inc.*, 130 N.H. 74, 80, 534 A.2d 390, 394 (1987); *Dunfey Realty Co. v. Enwright*, 101 N.H. 195, 197, 138 A.2d 80, 82 (1957). However, where, as in this case, the noncompetition covenant was ancillary to the sale of a business, it may be interpreted more liberally. *See Rent-A-Center v. Canyon Television & Appliance*, 944 F.2d 597, 600 (9th Cir. 1991); *Alexander & Alexander, Inc. v. Danahy*, 21 Mass. App. 488, 496, 488 N.E.2d 22, 28 (1986); *Coskey's T.V. & Radio Sales v. Foti*, 602 A.2d 789, 793 (N.J. Super. 1992). Under such circumstances, the parties presumably bargain from positions of equal bargaining power. The covenantor is paid a premium as consideration for his agreeing not to compete with the buyer, and the proceeds from the sale assure that the covenant will not result in undue hardship.

■ Thus, in deciding whether the defendant "indirectly" entered into competition with Centorr, the superior court should apply nor-

mal rules of contract interpretation, paying particular attention to the intent of the parties in entering into the noncompetition covenant, *see Gosselin v. Archibald*, 121 N.H. 1016, 1021, 437 A.2d 302, 306–07 (1981) (in interpreting noncompetition covenant ancillary to the sale of a business, court affirmed master's finding that covenantor "violated the spirit and intent" of the agreement); *see also Wilmot H. Simonson Co. v. Green Textiles Associates*, 755 F.2d 217, 219 (1st Cir. 1985) (in interpreting noncompetition covenant ancillary to the sale of a business, court looked to "particular language used against the background of other indicia of the parties' intention"); *Bicycle Transit Authority v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) ("Generally, when deciding whether a party has breached a restrictive covenant ancillary to the sale of a business, courts will interpret the covenant in the light of the purpose of the parties to provide against competition by the covenantor . . . .").

*Remanded.*

All concurred.