DOMINIC WENZELL, D.M.D. P.C., Appellant,

v.

Guy INGRIM, D.M.D., Appellee.

No. S–13347.

Supreme Court of Alaska.

April 9, 2010.

---

David A. Devine and Sarah A. Badten, Groh Eggers, LLC, Anchorage, for Appellant.

Susan D. Mack and Blake H. Call, Call, Hanson & Kell, P.C., Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Dominic Wenzell purchased a private dental clinic in Anchorage from Guy Ingrim.

The purchase agreement included a "Covenant Not to Compete" prohibiting Ingrim from the "practice of dentistry" within fifteen miles of his old clinic for two years and within ten miles for an additional three years. One year after the sale, Ingrim began employment as a dentist at the Alaska Native Medical Center (ANMC), two miles away from the clinic. Wenzell sued in superior court for breach of the covenant not to compete. The superior court found as a matter of law that Ingrim's employment at ANMC did not constitute the "practice of dentistry" and granted summary judgment in Ingrim's favor, dismissing the lawsuit. Although we conclude that Ingrim's employment at ANMC does constitute the "practice of dentistry" and vacate the superior court's grant of summary judgment, we remand the case to the superior court to determine whether Ingrim's employment at ANMC violates the covenant not to compete.

## II. FACTS AND PROCEEDINGS

### A. Facts

Wenzell and Ingrim are both professional dentists licensed to practice dentistry in Alaska. In 2005 Ingrim retained a broker to assist him in the sale of his Anchorage dental practice, Turnagain Dental Clinic. He began negotiations with Wenzell, who signed a Letter of Intent/Pre–Agreement in February 2006 to purchase Ingrim's practice. Wenzell offered $500,000 and proposed a "Restrictive Covenant" that would "restrict Dr. Guy Ingrim from practicing dentistry within a 30 mile radius [from Turnagain Dental Clinic] for a period of five years." After further negotiations, this restriction was reduced to fifteen miles for the first two years and ten miles for the next three years. The sale was consummated in May 2006. The $500,000 purchase price was broken down as follows: $400,000 for "Patient Charts & Goodwill," $10,000 for the "Restrictive Covenant Not to Compete," and the remaining $90,000 for dental equipment and supplies.

Section 13(a) of the Purchase and Sale Agreement, entitled "Seller's Covenant Not to Compete and/or Solicit," provides:

> In connection with the sale to Buyer of the goodwill of the practice ..., Seller[ ] shall not carry on or engage in the practice of dentistry, either directly or indirectly, as an owner, operator, or employee, within a fifteen (15) air mile radius of the Buyer's practice ... for a period of two (2) years from the closing date and then for the ensuing three (3) years for a radius of ten (10) air miles, without the prior written permission of the Buyer.

Section 13 also includes the following liquidated damages provision:

> The covenant not to compete and/or solicit is of material significance to Buyer. Because the damage Buyer will sustain will be difficult if not impossible to ascertain, if the covenant not to compete and/or solicit is breached for whatever reason, Seller shall pay Buyer Two Hundred Fifty Thousand Dollars ($250,000) as liquidated damages. Furthermore, Seller agrees that should he choose to treat any former patients of the practice other than his family members and first tier relations, that in addition to the liquidated damages set forth herein, he will pay the Buyer the sum of Three Hundred Dollars ($300) per patient.

According to Wenzell, this provision was of critical importance to him and he would not have purchased Ingrim's dental practice without it. Wenzell claims that prior to the signing of the agreement, he reminded Ingrim of his obligations under Section 13.

Following the sale, Ingrim moved with his family to Mexico, where he intended to stay for the duration of the restrictive covenant. Due to marital difficulties, however, he returned to Anchorage roughly a year later.

Upon his return, Ingrim began employment at the Alaska Native Medical Center (ANMC), in his own words "practicing dentistry." ANMC is located within fifteen miles of Turnagain Dental Clinic and provides free dental services to Alaska Natives, other Native Americans, and their children. At ANMC, Ingrim performs dental examinations, reviews x-rays, drills and fills cavities, and occasionally pulls teeth.

Upon learning that Ingrim was working at ANMC, Wenzell, through his attorney, sent a letter demanding that Ingrim cease practic-

ing dentistry within fifteen miles of Turnagain Dental Clinic and pay Wenzell $250,000 within nine days or face litigation. Ingrim came to Wenzell's office the next day, requesting that Wenzell not bring a lawsuit. According to Ingrim, his employment at ANMC does not violate Section 13(a) because he does not compete with Turnagain Dental Clinic. Wenzell suggested that Ingrim take a position outside of the geographic scope of Section 13(a), but Ingrim refused. Wenzell filed suit on August 16, 2007.

The parties dispute whether Ingrim's employment at ANMC competes with Wenzell's business. Wenzell testified that his current and potential Alaska Native patients might instead seek treatment with Ingrim at ANMC, and then would not refer additional patients to his practice. Ingrim presented expert testimony that his employment at ANMC "is in no way unfair or actually competitive [with Turnagain Dental Clinic]. He's not in private practice, he doesn't have an office, he doesn't see private patients. He doesn't market his practice. He doesn't have a private phone number. There's no way that he's in competition with any dentist in the community." Ingrim's broker also suggested that employment at ANMC does not pose a competitive threat to Turnagain Dental Clinic and that the impact on the business is likely to be minimal. Ingrim testified that he has not solicited any former patients and in fact would be unable to solicit patients because ANMC patients do not select their dentist.

## B. Proceedings

The parties filed cross-motions for summary judgment: Ingrim sought a judgment that there was no breach of Section 13(a), while Wenzell sought $250,000 in damages for the breach of Section 13(a). After oral argument on February 26, 2008, the superior court ruled on the record that Ingrim had breached Section 13(a) as a matter of law and directed the parties to file supplemental briefing related to the validity of the liqui-

dated damages provision and alternative remedies.

After reviewing the supplemental briefing, the superior court vacated its prior judgment on April 21, 2008, and instead determined that a jury should decide whether Ingrim breached Section 13(a). Relying on *Aviation Associates v. TEMSCO Helicopters, Inc.* (*"TEMSCO"*),[1] the superior court concluded that there should be an evidentiary hearing to determine the proper interpretation of Section 13(a) and to formulate an appropriate jury instruction concerning the covenant.

The superior court held an evidentiary hearing on August 15 and August 25, 2008 in an attempt to frame an appropriate jury instruction. The court heard testimony by Wenzell; Ingrim; Joseph Consani, Ingrim's broker for the sale of his dental practice and now Wenzell's witness; and Stanley Pollock, Ingrim's expert witness on the sale of dental practices and what constitutes the practice of dentistry. At the end of the hearing, the court held as a matter of law that the "practice of dentistry" as used in Section 13(a) does not include employment at ANMC, and therefore granted Ingrim's motion for summary judgment that he did not breach Section 13(a). The court then held that there was a question of fact as to whether Ingrim solicited dental patients of Turnagain Dental Clinic. Wenzell informed the court that he was not pursuing a claim that Ingrim solicited patients and requested that it enter final judgment so that he could appeal the ruling. The court entered final judgment in favor of Ingrim on October 24, 2008, and Wenzell now appeals.

## III. STANDARD OF REVIEW

 A grant of summary judgment based upon contract interpretation is subject to de novo review.[2] "Drawing all reasonable inferences in favor of the nonmoving party, we will uphold summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a

1. 881 P.2d 1127 (Alaska 1994).

2. *K & K Recycling, Inc. v. Alaska Gold Co.,* 80 P.3d 702, 711–12 (Alaska 2003) (citing *Am. Com-*

*puter Inst. v. State,* 995 P.2d 647, 651 (Alaska 2000)).

matter of law." [3] "[S]ummary judgment is improper when the evidence before the superior court establishes a factual dispute as to the intent of the contracting parties." [4]

## IV. DISCUSSION

### A. The Proper Interpretation of Section 13(a)

### 1. Section 13(a) prohibits the practice of dentistry in competition with Turnagain Dental Clinic.

We must first interpret Section 13(a) before examining whether it was breached by Ingrim's employment at ANMC. As we have previously held, "[c]ovenants are construed to effectuate the parties' intent. Clear and unambiguous language should be accorded its plain meaning." [5] Where language is ambiguous, "extrinsic evidence of surrounding circumstances and usage may be admitted to aid in determining the intent of the parties and resolve the ambiguity." [6] A restrictive covenant ancillary to the sale of a business, like the one in this case, is construed liberally not to favor either party. [7]

Section 13(a) of the Purchase and Sale Agreement provides that Ingrim "shall not carry on or engage in the practice of dentistry, either directly or indirectly, as an owner, operator, or employee" for five years within certain geographic boundaries. Wenzell argues that the words of Section 13(a) are "simple, straightforward, and mean what they say"—they prohibit "any practice of dentistry" regardless of whether the practice is in competition with Turnagain Dental Clinic.

Ingrim argues that the parties instead intended Section 13(a) to be a "restriction against competition—not a restriction against all dentistry." In support of this interpretation, Ingrim notes the various references to Section 13(a) in the Purchase and Sale Agreement as a "Covenant Not to Compete." For example, the heading of Section 13(a) is "Seller's Covenant Not to Compete and/or Solicit"; the liquidated damages provision states that "[t]he covenant not to compete and/or solicit is of material significance to Buyer"; the "Restrictive Covenant Not to Compete" is listed as an asset being sold, with a value of $10,000; and Exhibit F lists "a covenant not to compete" as among the assets being sold.

The superior court found that "the primary intent of the parties was to address Dr. Wenzell's stated concern of not wanting to have another dental practice in competition with him down the street or within the mileage that was specified in the agreement." In addition to the references to Section 13(a) as a covenant not to compete, the superior court believed the $250,000 liquidated damages provision to be "indicative of a intent for there to be compensation in the event of actual competition between the buyer and the seller … as opposed to dentistry that would not be in direct competition with Dr. Wenzell's practice."

We agree, and conclude as a matter of law that the parties intended to prohibit Ingrim from practicing dentistry in competition with Turnagain Dental Clinic. As made clear by the numerous references in the agreement,

**3.** *Nichols v. State Farm Fire & Cas. Co.*, 6 P.3d 300, 303 (Alaska 2000).

**4.** *K & K Recycling, Inc.*, 80 P.3d at 712 (citing *Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1167 (Alaska 1998)).

**5.** *Gordon v. Brown*, 836 P.2d 354, 357 (Alaska 1992) (quoting *Lamoreux v. Langlotz*, 757 P.2d 584, 587 (Alaska 1988)).

**6.** *Nat'l Bank of Alaska v. J.B.L. & K. of Alaska, Inc.*, 546 P.2d 579, 582 (Alaska 1976); *see also Neal & Co., Inc. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 502 (Alaska 1995) ("extrinsic evidence [] includ[es] the parties' conduct, goals sought to be accom-

plished, and surrounding circumstances at the time the contract was negotiated" (citing *Peterson v. Wirum*, 625 P.2d 866, 870 & n. 7 (Alaska 1981))).

**7.** *See Aviation Assocs., Ltd. v. TEMSCO Helicopters, Inc.*, 881 P.2d 1127, 1130 n. 5 (Alaska 1994) ("Under such circumstances, the parties presumably bargain from positions of equal bargaining power." (quoting *Centorr–Vacuum Indus., Inc. v. Lavoie*, 135 N.H. 651, 609 A.2d 1213, 1215 (1992))). In contrast, restrictive covenants ancillary to employment agreements are strictly construed against the employer. *Id.*

Section 13(a) is a covenant not to compete.[8] The purpose of a covenant not to compete, as suggested by its name, is to prevent the covenantor from competing with the covenantee and, in the case of the sale of a business, to protect the goodwill associated with the purchased company.[9] Wenzell himself describes the purpose of Section 13(a) as protecting the "continued success of his dental practice," not barring Ingrim from practicing his trade in any capacity. Moreover, the magnitude of the liquidated damages provision, almost half of the total cost of the business, suggests an intent that the restrictive covenant only prevent the practice of dentistry that competes with Turnagain Dental Clinic. Therefore, Section 13(a) is properly interpreted as prohibiting only the practice of dentistry in competition with Turnagain Dental Clinic.

### 2. The term "practice of dentistry" should be given its common industry definition.

██ Ingrim argues that the "practice of dentistry" should be interpreted as "private, competitive, fee-for-service practice," which would exclude his employment at ANMC. The superior court agreed, holding as a matter of law that "practice of dentistry," as used in Section 13(a), does not include employment at ANMC and thus Ingrim's employment at ANMC does not violate Section 13(a). This holding was in error.

We have stated "the general rule of law" that "a contract may be interpreted by the general and accepted usage of the trade or business involved."[10] Thus, the term "practice of dentistry" should be given its common industry definition. The American Dental Association defines "dentistry" as "the evaluation, diagnosis, prevention and/or treatment (nonsurgical, surgical or related procedures) of diseases, disorders and/or conditions of the oral cavity, maxillofacial area and/or the adjacent and associated structures and their impact on the human body." We conclude that this is the proper definition of "practice of dentistry" as used in Section 13(a).[11]

The superior court relied on AS 08.36.350 in finding, as does Ingrim in arguing, that the "practice of dentistry" excludes employment at ANMC. Alaska Statute 08.36.350(a) provides that the statutory chapter on dentistry "applies to a person who practices ... dentistry in the state except ... a dentist in the employ ... of the Alaska Native Service." As an initial matter, this statutory provision was not explicitly or implicitly incorporated into the parties' Purchase and Sale Agreement. There is no evidence in the record that Ingrim and Wenzell's understanding of the meaning of "practice of dentistry" was influenced by this statute, or even that they were familiar with the statute at the time of contracting.

In any event, we interpret AS 08.36.350(a) differently than Ingrim and the superior court. The statutory provision does not suggest that a dentist at ANMC is not engaging in the "practice of dentistry"; instead, it

8. The Purchase and Sale Agreement states that "descriptive headings ... are for convenience only and shall not be deemed to affect the meaning or construction of any provisions herein." Even ignoring the heading of Section 13(a), there are three other references to the provision as a covenant not to compete.

9. *See* RESTATEMENT (SECOND) OF CONTRACTS § 188 cmt. f (explaining that covenants not to compete ancillary to the sale of a business protect the covenantee's "legitimate interest" in the "value of the good will that he has acquired"); BLACK'S LAW DICTIONARY 392 (8th ed. 2004) ("Noncompetition covenants are valid to protect business goodwill in the sale of a company."). "Goodwill" is defined as a "business's reputation, patronage, and other intangible assets that are considered when appraising the business, esp. for purchase; the ability to earn income in excess of the income that would be expected from the business viewed as a mere collection of assets." BLACK'S LAW DICTIONARY 715 (8th ed. 2004).

10. *Stock & Grove, Inc. v. City of Juneau*, 403 P.2d 171, 176 (Alaska 1965); *see also* AS 45.01.303(d) ("usage of trade in the vocation or trade in which [the parties] are engaged or of which they are or should be aware is relevant in ascertaining the meaning of the parties' agreement [and] may give particular meaning to specific terms of the agreement").

11. Similarly, Alaska law provides that one engages in the "practice of dentistry" who "evaluates, diagnoses, treats, or performs preventative procedures related to diseases, disorders, or conditions of the oral cavity, maxillofacial area, or adjacent and associated structures." AS 08.36.360.

exempts an Alaska Native Service dentist from all provisions of the chapter on dentistry, including licensing requirements, disciplinary actions, and statutory definitions. It is precisely because "a dentist in the employ of the ... Alaska Native Service" is practicing dentistry that it is necessary to exempt him or her from the otherwise applicable statutory provisions.[12]

Relying on the expert testimony of Dr. Pollock, Ingrim also argues that the "private practice of dentistry" excludes employment at ANMC because such employment instead constitutes "'community' dental services." Even assuming this to be true, it is not relevant here—Section 13(a) prohibits the "practice of dentistry," not the "private practice of dentistry." Dr. Pollock did not clearly testify that the "practice of dentistry" excludes community dentistry.[13]

### B. Whether Ingrim Breached Section 13(a) Is a Question of Fact.

Ingrim's employment at ANMC clearly constitutes the "practice of dentistry" as that term is defined above. Ingrim sees numerous individual patients, performing their dental examinations, reviewing their x-rays, drilling and filling their cavities, and pulling teeth "on occasion." Moreover, Ingrim has admitted during this litigation that he is practicing dentistry at ANMC. In his affidavit submitted in support of his motion for summary judgment, Ingrim stated: "I admit that I am practicing dentistry and I admit the Alaska Native Medical Center is located within a fifteen air mile radius of the Turnagain Dental Office." Similarly, in his answer, Ingrim admitted that he "began working at

the Alaska Native Medical Center engaging in the practice of dentistry."[14] Thus, Ingrim's employment falls within the category of activity prohibited by the covenant not to compete.

But this does not resolve the question before us: whether Ingrim's employment violates Section 13(a). As we discussed earlier, Section 13(a) is properly interpreted as prohibiting the practice of dentistry *in competition* with Turnagain Dental Clinic, thereby protecting Wenzell's legitimate interest in the goodwill he acquired. In the typical case, where a party seeks to enforce a covenant not to compete against a person who opens a for-profit practice or accepts private employment, a court need not inquire into the presence of competition; it can be presumed. A plaintiff can prove a breach of the covenant by showing that the challenged conduct falls within the category of prohibited activity and occurred within the geographic scope and duration of the covenant. This case, however, presents a rare instance where a party is attempting to enforce a covenant not to compete against a person employed by a federally-funded non-profit organization that provides free or low-cost health care services. In such a case, competition will not be presumed and must be proven.

We therefore remand this case to the superior court to consider whether Ingrim's practice of dentistry at ANMC is in competition with Turnagain Dental Clinic and thus violates Section 13(a). This question cannot be answered based on the record before us, and may need to be presented to a jury to resolve factual disputes.[15] In considering whether

---

12. Although exempt from the dentistry chapter, such a dentist is still "held to the same standard of care" as one to whom the dentistry chapter is applicable. AS 08.36.350(b).

13. Dr. Pollock did provide testimony that "a community dentist is not really practicing dentistry...." The American Dental Association, in contrast, refers to "public health" dentistry (used interchangeably with "community" dentistry by Dr. Pollock) as "that form of *dental practice* which serves the community as a patient rather than the individual." (Emphasis added.) But even crediting Dr. Pollock's testimony, Ingrim sees *individual* patients at ANMC and does not serve communities by, for example, helping orga-

nize the fluoridation of village water treatment plants, attending village dental health fairs, or lecturing Alaska Native communities about the importance of dental health. Thus, he is not exclusively a community dentist.

14. *See Darnall Kemna & Co., Inc. v. Heppinstall,* 851 P.2d 73, 76 (Alaska 1993) ("The general rule provides that admissions made in the pleadings are conclusively established.").

15. The superior court suggested that there was a disputed factual issue concerning competition when it ruled that the parties would go to trial on the claim that Ingrim solicited patients in violation of the Purchase and Sale Agreement, al-

there is competition, the superior court should examine whether Ingrim's employment at ANMC has the realistic potential to draw business away from Turnagain Dental Clinic, reduce the number of referrals it receives, or otherwise harm Turnagain Dental Clinic and the goodwill Wenzell purchased.

## C. The Superior Court Must Consider Whether Section 13(a) Is Enforceable as Applied to Ingrim's Employment at ANMC.

Ingrim argues that, to the extent his employment at ANMC is found to violate Section 13(a), that provision is overbroad and unenforceable. Although raised below, the superior court did not reach this issue because it found that Ingrim's employment at ANMC did not constitute the practice of dentistry and therefore did not violate Section 13(a). If on remand the superior court or a jury determines that Section 13(a) was breached, the superior court must consider its enforceability.[16]

 "[N]on-competition agreements are disfavored in the law as restraints upon trade and because they impose hardships upon individuals seeking to earn a livelihood."[17] Such agreements may be ancillary to an employer-employee agreement or, as in this case, to the sale of a business.[18] The enforceability of a non-competition agreement ancillary to the sale of a business is an issue of first impression in Alaska.[19] Unlike covenants not to compete ancillary to employment contracts, which "are scrutinized with particular care because they are often the product of unequal bargaining power,"[20] this level of scrutiny is not applied to covenants ancillary to the sale of a business because the contracting parties are more likely to be of equal bargaining power.[21]

 According to the Restatement (Second) of Contracts, a covenant not to compete is unenforceable on grounds of public policy if it unreasonably restrains trade, either because:

(a) the restraint is greater than is needed to protect the promisee's legitimate interest, or

(b) the promisee's need is outweighed by the hardship to the promisor and the likely injury to the public.[22]

In the context of covenants not to compete ancillary to the sale of a business, the Restatement describes the "promisee's legitimate interest" as the "value of the good will that he has acquired" in the purchase of the business.[23] When determining the enforce-

---

though Wenzell chose not to proceed to trial on that claim.

16. The enforceability of a covenant not to compete is a question of law to be decided by the court after a factual inquiry into the relevant factors. *See* Ferdinand S. Tinio, Annotation, *Validity and Construction of Contractual Restrictions on Right of Medical Practitioner To Practice, Incident to Sale of Practice,* 62 A.L.R.3d 918 (1975) ("[W]hat is a reasonable restraint on competition is a question of law for the determination of the court, and not one of fact for the jury."); 6 RICHARD A. LORD, WILLISTON ON CONTRACTS § 13:4 (4th ed. 2009) ("The question of reasonableness is ordinarily for the court, not the jury.").

17. *DeCristofaro v. Sec. Nat'l Bank,* 664 P.2d 167, 168–69 (Alaska 1983).

18. *See* RESTATEMENT (SECOND) OF CONTRACTS § 188(2) (1981).

19. We have, however, discussed the enforceability of a covenant not to compete ancillary to an employment contract. In *Data Management, Inc. v. Greene,* this court held that if an overbroad covenant not to compete ancillary to an employ-

ment contract can be reasonably altered to render it enforceable, a court shall do so unless it finds that the covenant was not drafted in good faith. 757 P.2d 62, 64 (Alaska 1988).

20. RESTATEMENT (SECOND) OF CONTRACTS § 188.

21. *Aviation Assocs., Ltd. v. TEMSCO Helicopters, Inc.,* 881 P.2d 1127, 1130 n. 5 (Alaska 1994); *see also Dalrymple v. Hagood,* 246 Ga. 235, 271 S.E.2d 149, 150 (1980) ("In determining the reasonableness of a covenant not to compete greater latitude is allowed in those covenants relating to the sale of a business than in those covenants ancillary to an employment contract."); *Century Bus. Servs., Inc. v. Urban,* 179 Ohio App.3d 111, 900 N.E.2d 1048, 1054 (2008) ("restrictive covenants entered into ancillary to the sale of a business should be afforded less scrutiny than ones entered into by employees as consideration for employment").

22. RESTATEMENT (SECOND) OF CONTRACTS §§ 186, 188.

23. *Id.* § 188 cmt. f; *see also* 15 GRACE MCLANE GIESEL, CORBIN ON CONTRACTS § 80:8 (Rev. Ed. 2003) ("[C]ourts readily recognize the interest of buy-

ability of a covenant not to compete ancillary to the sale of a business, a court must therefore consider whether the restriction bargained for is no greater than is needed to protect the goodwill the purchaser has acquired in the business and, if so, whether the purchaser's need to protect that goodwill outweighs the hardship to the seller and likely injury to the public. A similar test has been adopted in numerous jurisdictions,[24] and we adopt it in Alaska.

■ Under the first prong of the analysis, the superior court must decide whether Section 13(a), as applied to Ingrim's employment at ANMC, is more restrictive than necessary to protect Wenzell's legitimate interest in the goodwill he acquired in purchasing Turnagain Dental Clinic. If the superior court or a jury determines that Ingrim's employment at ANMC is in competition with Turnagain Dental Clinic and thus violates Section 13(a), it will have already resolved the first prong—the covenant is no broader than is necessary to protect the goodwill Wenzell purchased. Under the second prong, the superior court must balance Wenzell's need to protect the goodwill he purchased with the hardship to Ingrim from enforcing the covenant and the likely injury to the public. It appears from the record that Ingrim is employed by an organization providing an important, low-cost service to a population in need of such care. In a case that implicates such considerations, it is appropriate for a court to closely scrutinize the covenant not to compete to determine whether it is void for public policy reasons.[25]

■ Although a court should generally examine whether a covenant not to compete is enforceable only after determining that it was breached, it is within the superior court's discretion on remand to assume a breach and address the enforceability of the covenant first. If the superior court can decide the enforceability of the covenant as applied to Ingrim's employment at ANMC on the current record or with an additional evidentiary hearing, but prior to a full trial, it may do so in the interest of judicial economy.[26]

## D. The Validity of the Liquidated Damages Provision

If Ingrim is found to have breached Section 13(a) and the superior court holds that this provision is enforceable, the superior court must evaluate the validity of the liquidated damages provision under *Carr–Gottstein Properties, Ltd. Partnership v. Benedict.*[27] Although we do not decide this issue today, we note our concern that the amount of stipulated damages is the same regardless of the nature of the breach of Section 13(a), which suggests that the parties made no

ers in protecting the good will purchased and frequently enforce covenants not to compete accompanying the sale of a business.").

24. *See* Tinio, *supra* note 16 (listing jurisdictions in which, to be enforceable, "contractual restrictions on the right of medical practitioners to practice, made as an incident to the sale of a medical practice ... must not extend beyond what is necessary to protect the interests of the buyer, must not be unnecessarily injurious to the seller, and must not unduly interfere with the public interest."); *see also* 6 WILLISTON ON CONTRACTS, *supra* note 16, § 13:4 ("In considering what is reasonable, courts pay regard to: (1) the question of whether the promise is broader than is necessary for the protection of some legitimate interest of the covenantee; (2) the effect of the promise or agreement on the covenantor, and (3) the effect of the promise or agreement upon the public welfare or common good." (internal citations omitted)).

25. *See* 6 WILLISTON ON CONTRACTS, *supra* note 16, § 13:6 ("[T]he concern of the courts for the public welfare typically results in closer judicial scrutiny of restraints on ... dentists ... because of the ... value of their services to the community.").

26. If the superior court rules that Section 13(a) is unenforceable, either before or after trial, it should modify the provision to make it enforceable if it can reasonably do so provided that the agreement was drafted in good faith, which Ingrim has conceded. *See Data Mgmt., Inc. v. Greene,* 757 P.2d 62, 64 (Alaska 1988).

27. 72 P.3d 308, 311 (Alaska 2003) ("Liquidated damages clauses are proper ... where it would be difficult to ascertain actual damages, and where the liquidated amount [is] a reasonable forecast of the damages likely to occur in the event of breach." (internal quotation marks omitted)). We thus agree with the superior court that the validity of a liquidated damages clause is to be decided by the court, which will consider whether the facts of the case satisfy the liquidated damages test. *Id.* at 310–11.

attempt to forecast actual damages.[28] Indeed, Wenzell stated that the $250,000 figure was selected because it represents half of the purchase price, essentially conceding that it was not a forecast of actual damages.

## V. CONCLUSION

For the foregoing reasons, we VACATE the superior court's grant of Ingrim's motion for summary judgment dismissing the lawsuit and REMAND the case to the superior court to conduct proceedings consistent with this opinion.

EASTAUGH, Justice, not participating.

---

**28.** *See Kalenka v. Taylor,* 896 P.2d 222, 229 (Alaska 1995) (finding a liquidated damages provision to be flawed because it assigned the same high penalty "for a total or partial breach, or for breach of minor or major contract provisions" (internal quotation marks omitted)).