OPINION
STOWERS, Justice.
I. INTRODUCTION
Jack Elias Morrell spent several hours in Chilkoot Charlie's bar and was served alcoholic beverages. After Morrell left the bar, he and Eric Kalenka had a confrontation; Morrell produced a knife and fatally stabbed Kalenka. The personal representative of Ka-lenka's estate brought a wrongful death claim against Chilkoot Charlie's, alleging the bar had served alcohol to Morrell when he was a statutorily defined "drunken person" and therefore the bar was liable for Kalen-ka's death.
The issue before us is whether the Kalenka Estate raised a genuine issue of fact whether Morrell was a "drunken person" within the meaning of AS 04.16.080 when he was served alcohol at Chilkoot Charlie's. We hold that the Kalenka Estate has presented enough evidence to clear Alaska's low threshold for summary judgment and to support a reasonable inference that Morrell's intoxication was plain and easily observed while at the bar. We therefore reverse the superior court's decision granting summary judgment to Chil-koot Charlie's.
II. FACTS AND PROCEEDINGS
A. Facts
In February 2004 Morrell and two cousins went to Chilkoot Charlie's in Anchorage. They were there for two to four hours, during which time Morrell was steadily drinking. Morrell stated that he did not have any drinks before arriving at Chilkoot Charlie's, nor did he have any drinks after leaving the bar.
After leaving Chilkoot Charlie's, possibly as late as 2:30 a.m., Morrell drove his cousin's vehicle to a nearby park and then to a Taco Bell. At about 3:15 a.m., in the Taco Bell drive-through, Morrell's vehicle struck Kalenka's vehicle's rear bumper. Kalenka got out of his car and a confrontation ensued; Morrell produced a knife and stabbed Kalen-ka multiple times. Kalenka died soon thereafter,.
Two police officers who arrived at the scene later testified at Morrell's criminal trial that shortly after stabbing Kalenka, Morrell was uncooperative, slurred his speech, and smelled of alcohol. Claude Doucet, who witnessed the confrontation, also testified at the criminal trial that Morrell appeared intoxicated, noting Morrell was loud, cursing, and stumbling. Morrell was estimated to have a blood alcohol level at the time of the incident as high as 0.27, the equivalent of having up to 13 to 14 typical alcoholic beverages in his system.
The general manager of Chilkoot Charlie's stated that none of the bar's employees remembered seeing Morrell that night. Dou-cet had also been at the bar for several hours that evening before the Taco Bell incident, and he stated he did not see Morrell at the bar and did not observe anyone "obviously intoxicated" being served at Chilkoot Charlie's. A Chilkoot Charlie's employee recognized Morrell from his picture in the newspa *348 per and stated that he had seen Morrell in the bar several times before February 2004; "On those occasions [Morrell] had been polite, soft spoken and mellow." Neither party presented any direct evidence of Morrell's actual appearance or conduct while at Chil-koot Charlie's, and, more specifically, presented no direct evidence of Morrell's appearance or conduct when served alcohol at Chilkoot Charlie's.
B. Proceedings
In February 2006 Uwe Kalenka, the personal representative of Eric Kalenka's estate (Kalenka Estate), filed a wrongful death action against Jadon, Inc. (Chilkoot Charlie's).[1] The Kalenka Estate claimed Chilkoot Charlie's violated AS 04.16.0830 by serving alcohol to Morrell when he was a drunken person and therefore was liable for Kalenka's death.[2]
In February 2010 Chilkoot Charlie's moved for summary judgment on two grounds: (1) there was no evidence that Chil-koot Charlie's with criminal negligence provided Morrell alcohol when he was a "drunken person"; and (2) Morrell's stabbing of Kalenka was a sufficient superseding cause to discharge Chilkoot Charlie's of any liability for Kalenka's death. The Kalenka Estate opposed the motion, presenting the expert report of Elizabeth Trendowski.[3]
The Trendowski report's purpose "was to determine if the action/inaction of Chilkoot Charlie's('] employees and management was negligent and violated the Alaska state liquor code by permitting alcohol beverages to be sold or given to a visibly intoxicated person." Trendowski relied on: (1) a forensic toxicology report concluding Morrell "was under the influence of a combination of alcohol and energy drinks at the time of the stabbing"; (2) the police officers' testimony at Morrell's criminal trial describing Morrell's "actions and demeanor at the scene" after they arrived; and (8) Doucet's testimony at the criminal trial regarding his observations of Morrell at Taco Bell.[4] The toxicology report extrapolated Morrell's blood alcohol concentration to be between 0.11 and 0.27 at 8:15 a.m., the time of the stabbing, and estimated Morrell had consumed between seven and 18 drinks. In addition to the toxicological findings Trendowski relied upon, the Kalenka Estate submitted toxicologist Joel R. Mil-zoff's report extrapolating the same blood-alcohol concentration but estimating Morrell consumed between 7.5 and 19.5 drinks.
*349 After discussing Alaska's statutory requirements for a liquor licensee and employee aleohol-server education, Trendowski's report stated, "Morrell's aberrant behavior was a direct result of his intoxication and should have reasonably been observed by a certified ... bartender, server or bouneer." The report stated that based on the toxicology report, "[clertified ... servers should have ree-ognized the effect ... the excessive amount of vodka and [energy drink] was having on Mr. Morrell and cut him off from consuming any more alcohol."
Trendowski's report concluded that "Mor-rell more likely than not exhibited visible signs of intoxication while on the premises of Chilkoot Charlie's. Based on the testimony of the independent witnesses at Taco Bell, Mr. Morrell was acting irrational, angry, and was uncooperative with both the victim and law enforcement." The report described Morrell's actions at Taco Bell as "visible and obvious signs of intoxication," and noted that "[a] reasonably attentive bartender or server would have observed similar signs at the bar and stopped the service of alcohol. The signs of intoxication observed shortly after Mr. Morrell left Chilkoot Charlie's would have been obvious to any aleohol server; particularly one who has been ... trained."
Although Trendowski's report conceded that behavioral changes associated with intoxication "do not all appear simultaneously," it asserted that "[they appear in a progressive manner" and "(there was plenty of opportunity for any attentive server, bartender or bouncer to observe some or all of [his] behaviors that indicated Mr. Morrell was obviously and visibly intoxicated." Trendow-ski's report ultimately concluded that Chil-koot Charlie's: (1) failed to monitor the number of drinks served to Morrell; (2) failed to observe and recognize his signs of intoxication; and (8) failed to stop serving aleoho! to a drunken person.
The superior court granted Chilkoot Charlie's' summary judgment motion on the basis that there was no admissible evidence its employees acted with criminal negligence as to Morrell The court stated Trendowski's report "implicate[d] the Court in such a degree of speculation" that no jury could properly infer Morrell was observably drunk at the bar.
The Kalenka Estate appeals the superior court's grant of summary judgment dismissing its suit against Chilkoot Charlie's.
III STANDARD OF REVIEW
We review a grant of summary judgment de novo.[5] We review the facts in the light most favorable to the non-moving party and draw all factual inferences in the non-moving party's favor.[6] A grant of summary judgment is affirmed "when there are no genuine issues of material fact, and the prevailing party ... [is] entitled to judgment as a matter of law."[7] "A genuine issue of material fact exists where reasonable jurors could disagree on the resolution of a factual issue."[8] Whether the evidence presented a genuine issue of material fact is a question of law that we independently review.[9]
IV. DISCUSSION
Alaska's dram shop statute immunizes a licensed alcohol provider from civil liability for damages caused by a patron's intoxication unless the licensee provided aleo-hol to the patron when that patron was a "drunken person." [10] A drunken person is "a person whose conduct is substantially and *350 visibly impaired as a result of alcohol ingestion." "[11] The statutory definition of "drunken person" includes two elements: (1) substantial impairment of the person's physical or mental conduct; and (2) that such impairment be "plain and easily observed or discovered." [12] Thus, Chilkoot Charlie's potential liability depends on whether it served Morrell drinks when he was visibly impaired through intoxication.[13]
The superior court granted summary judgment on the basis that the Trendowski report failed to raise a genuine issue of fact whether Chilkoot Charlie's served Morrell alcohol when he was a statutorily defined "drunken person." There is no direct evidence of Mor-rell's appearance or conduct at Chilkoot Charlie's, and the superior court stated that although Morrell may have been intoxicated "there still has to be a proper inference [regarding visible impairment] that the jury can draw, rather than pure speculation, and ... [the Trendowski report is] in the land of pure speculation here."
The Kalenka Estate argues that summary judgment was improper because evidence of Morrell's appearance and conduct at Taco Bell can be "extrapolated by the experts back to the time that Morrell was at Chilkoot Charlie's, and what his behavior would have been like [there]." The Kalenka Estate contends that based on the observations of Mor-rell at Taco Bell and the estimate that Mor-rell consumed between 7.5 and 19.5 drinks before the incident, Trendowski correctly concluded Morrell was observably impaired earlier at Chilkoot Charlie's. Chilkoot Charlie's responds that the superior court properly granted summary judgment because there was no factual basis for Trendowski's conclusions about Morrell's appearance or conduct at the bar. While conceding Morrell likely was legally intoxicated at the bar, Chilkoot Charlie's contends the proper question is whether he was a "drunken person" as defined in AS 04.21.080(b)(8).
Summary judgment should only be granted if the non-moving party has not raised a genuine issue of material fact.[14] This is not a stringent standard."[15] When deciding whether there is a genuine issue of material fact, we must draw all reasonable inferences from the evidence in favor of the non-moving party.[16] "A genuine issue of material fact exists where reasonable jurors could disagree on the resolution of a factual issue." [17] We conclude that reasonable jurors could disagree about whether Chilkoot Charlie's served Morrell while he was a statutorily defined "drunken person."
In Kavorkian v. Tommy's Elbow Room, we examined an action under the dram shop statute.[18] The jury in that case heard conflicting testimony about whether the patron was visibly intoxicated while served at the bar, and we noted that "[tlestimony concerning [the patron's] condition shortly before and after his visit to [the bar] is cireumstan- *351 tially relevant to the determination of [his] condition at [the bar]." [19]
Here, the Kalenka Estate has presented several pieces of evidence concerning Mor-rell's condition both during and shortly after his visit to the bar, which, when viewed in a light most favorable to the Estate,[20] and drawing all inferences in favor of the Estate,[21] together raise a genuine issue of material fact, or to put it another way, support a reasonable inference that Morrell was visibly impaired through intoxication when he was served at Chilkoot Charlie's: (1) Morrell was at Chilkoot Charlie's for two to four hours, during which time he was steadily drinking; (2) Morrell admitted he consumed no aleohol before arriving at Chilkoot Charlie's; (8) Morrell was served and consumed as many as 18 or 19 alcoholic drinks while at the bar;[22] (4) Morrell consumed no additional aleohol after leaving Chilkoot Charlie's; (5) approximately 45 minutes after leaving Chil-koot Charlie's, Morrell displayed "visible and obvious signs of intoxication;" [23] and (6) Mor-rell was estimated to have a blood-aleohol level at the time of the altercation as high as 0.27, the equivalent of having 18 to 14 typical alcoholic beverages in his system. Thus, evaluating all of this factual evidence in a light most favorable to the Kalenka Estate, before the stabbing Morrell consumed aleo-hol only at Chilkoot Charlie's, he was at Chilkoot Charlie's two to four hours, he drank about 18-18 drinks in that time period, he was observed to be visibly and obviously impaired by intoxication about 45 minutes after he left, and his blood aleohol at that 45-minute mark was .027. These facts are sufficient to raise a genuine issue of fact whether Morrell was impaired by intoxication when he was served his last drink at Chilkoot Charlie's.
This conclusion is consistent with decisions from a number of states holding that summary judgment is inappropriate even without direct evidence of intoxication at the time of service where there is evidence that the patron was served alcohol and was visibly intoxicated soon after. In Smith v. Shagnasty's, the Towa Supreme Court noted the chanee that the last drink pushed the patron over the brink into obvious intoxication is fairly small, and thus held that it would be reasonable for a jury to conclude that the patron was obviously intoxicated when she was served that last drink:
In affording [the plaintiff] all legitimate inferences, we simply recognize that if (1) one beer does not a drunk make, (2) [the bar} sold and served [the patron] a beer, and (3) [the patron] was shortly thereafter in a visibly intoxicated condition, then it stands to reason that (4) [the patron] was also noticeably intoxicated at the time of service. Moreover, if a patron was likely visibly intoxicated at the time of service, a jury could find (5) the bar knew or, at the very least, should have known of her intoxication.[24]
The logic in that case is particularly compelling where, as here, there is evidence that the patron (Morrell) had been drinking a large number of alcoholic beverages steadily for some time. Morrell admitted he drank no alcohol before or after he visited the bar. Further, there was evidence that shortly after he departed the bar, Morrell had a very high blood alcohol content and was observed to be a "drunken person." Accordingly, a jury could reasonably infer that Morrell was exhibiting obvious signs of intoxication when he was served his last drink of the night at Chilkoot Charlie's.
In Fairbanks v. J.B. McLoughlin Co., the Washington Supreme Court held that direct evidence of obvious intoxication at the time of *352 service is not necessary to survive summary judgment:
A police officer's subjective observation that the employee was obviously intoxicated shortly after leaving the banquet may raise an inference that she was obviously intoxicated when the employer served her, provided that the employee did not consume any alcohol after leaving the banquet and provided that no time remains unaccounted for between the banquet and the subsequent observation.[25]
Courts of appeal in Indiana and Pennsylvania have reached similar conclusions. In Indiana, the court of appeals held that "the fact that [the bar] served even one beer to a person who shortly thereafter was in a state of serious intoxication gives rise to a question of fact whether [the person] was visibly intoxicated at the time."[26] A Pennsylvania court was confronted with a similar question.[27] Evidence presented at trial established that the patron had consumed a substantial amount of alcohol before being served his last drink at the bar, that he drove erratically upon leaving the bar, that he appeared intoxicated to the investigating police officer, and that his blood-aleohol content was elevated.[28] The court held that "[dlespite the lack of direct evidence bearing on [the patron's] condition when he was served his last drink, we think that the jury could have reasonably concluded that he was visibly intoxicated at that time." [29]
In all of these cases, direct testimony about a patron's behavior when the patron was served was not necessary to survive summary judgment. Given this authority from other states and our own low summary judgment threshold, the Kalenka Estate has presented enough evidence to survive summary judgment.
V, CONCLUSION
For the reasons discussed, we REVERSE the superior court's grant of summary judgment dismissing the Kalenka Estate's dram shop claim against Chilkoot Charlie's.

. The Estate also named Morrell and William P. Wassili, II as defendants. Neither of these individuals have participated in this appeal.

. AS 04.16.030 prohibits a licensed provider with . criminal negligence from selling or giving alcohol to a drunken person or allowing a drunken person to enter and remain on licensed premises.
AS 04.21.020(a), the dram shop immunity provision, reads in pertinent part:
[A] person who provides alcoholic beverages to another person may not be held civilly liable for injuries resulting from the intoxication of that person unless the person who provides the alcoholic beverages holds a license ... and ... (2) the alcoholic beverages are provided to a drunken person in violation of AS 04.16.030.

. The report is not a sworn statement, nor is it attached to a validly sworn affidavit. See Maines v. Kenworth Alaska, Inc., 155 P.3d 318, 323-24 (Alaska 2007) (concluding the superior court did not abuse its discretion in excluding unsigned and unsworn declaration from its consideration of summary judgment, as assertions of fact in unverified pleadings and memoranda cannot be relied on in denying motion for summary judgment). But Chilkoot Charlie's did not raise an appropriate objection in the superior court or this court, and the report was and will be considered on its merits.

. The criminal trial testimony was hearsay as to Chilkoot Charlie's. See Alaska R. Evid. 801(c) ("Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). When its summary judgment motion was being considered, Chilkoot Charlie's had a pending motion challenging the admissibility of such testimony at trial, but an expert's opinion testimony can rely on inadmissible evidence. See Alaska R. Evid. 703 (providing that "facts or data upon which an expert bases an opinion" do not need to be admissible, "but must be of a type reasonably relied upon by experts in the particular field in forming opin-fons or inferences upon the subject"); see also Broderick v. King's Way Assembly of God Church, 808 P.2d 1211, 1217 (Alaska 1991) (stating hearsay can be a permissible basis of expert's opinion testimony "provided the reasonable reliance test is satisfied" (citing Norris v. Gatts, 738 P.2d 344, 349 (Alaska 1987))). Chilkoot Charlie's did not raise an objection in the superior court regarding Trendowski's reliance on hearsay evidence.

. Fraternal Order of Eagles v. City & Borough of Juneau, 254 P.3d 348, 352 (Alaska 2011) (citing Rockstad v. Erikson, 113 P.3d 1215, 1219 (Alaska 2005)).

. Id. (quoting Rockstad, 113 P.3d at 1219).

. Id. (quoting Rockstad, 113 P.3d at 1219).

. Burnett v. Covell, 191 P.3d 985, 990 (Alaska 2008) (citing McGee Steel Co. v. State ex rel. McDonald Indus. Alaska, Inc., 723 P.2d 611, 614 (Alaska 1986)).

. Olson v. Teck Cominco Alaska, Inc., 144 P.3d 459, 463 (Alaska 2006) (citing French v. Jadon, Inc., 911 P.2d 20, 24 (Alaska 1996)).

. See AS 04.21.020(a)(2) (immunizing alcohol provider from civil liability unless alcoholic beverages provided to drunken person); see also AS 04.16.030 (prohibiting alcohol provider with criminal negligence from selling or giving alcohol to drunken person).

. Gonzales v. Safeway Stores, Inc., 882 P.2d 389, 393 (Alaska 1994) (citing AS 04.21.080(b)(8)).

. AS 04.21.080(b)(8) provides:
"drunken person" means a person whose physical or mental conduct is substantially impaired as a result of the introduction of an alcoholic beverage into the person's body and who exhibits those plain and easily observed or discovered outward manifestations of behavior commonly known to be produced by the over-consumption of alcoholic beverages.

. See Gonzales, 882 P.2d at 395 (''The question of [the liquor store's] 'criminal negligence' is dependent on whether [the purchaser] was a drunken person.").

. See Price v. Unisea, Inc., 289 P.3d 914, 918 (Alaska 2012) (quoting Dominic Wenzell, D.M.D. P.C. v. Ingrim, 228 P.3d 103, 106 (Alaska 2010)).

. See Hammond v. State, Dep't of Transp. & Pub. Facilities, 107 P.3d 871, 881 (Alaska 2005) ("It is well established that 'the evidentiary threshold necessary to preclude an entry of summary judgment is low.' ") (quoting John's Heating Serv. v. Lamb, 46 P.3d 1024, 1032 (Alaska 2002)).

. See Price, 289 P.3d at 918 (quoting Dominic Wenzell, D.M.D. P.C., 228 P.3d at 106).

. Burnett v. Covell, 191 P.3d 985, 990 (Alaska 2008) (citing McGee Steel Co. v. State ex rel. McDonald Indus. Alaska, Inc., 723 P.2d 611, 614 (Alaska 1986)).

. 694 P.2d 160 (Alaska 1985).

. Id. at 165 n. 9.

. Fraternal Order of Eagles v. City & Borough of Juneau, 254 P.3d 348, 352 (Alaska 2011) (quoting Rockstad v. Erikson, 113 P.3d 1215, 1219 (Alaska 2005).

. Id. (quoting Rockstad, 113 P.3d at 1219).

. Morrell stated that he consumed both beer and "mandarin Red Bull," a combination of vodka and an energy drink, at the bar.

. Witnesses testified that Morrell was emotional and uncooperative toward police commands and instructions and that he was stumbling and slurring his speech.

. 688 NW.2d 67, 75 (Iowa 2004).

. 131 Wash.2d 96, 929 P.2d 433, 436 (1997) (citing Dickinson v. Edwards, 105 Wash.2d 457, 716 P.2d 814 (1986)).

. 26 Ward v. D & A Enters. of Clark Cnty., Inc., 714 N.E.2d 728, 730 (Ind.App.1999).

. See Couts v. Ghion, 281 Pa.Super. 135, 421 A.2d 1184 (1980).

. Id. at 1188.

. Id.; see also Fandozzi v. Kelly Hotel, Inc., 711 A.2d 524, 527 (Pa.Super.Ct.1998) ("[We conclude that a plaintiff can prove dram shop liability in the absence of direct eyewitness evidence that an individual was served alcohol at a time when he or she was visibly intoxicated."); Speicher v. Reda, 290 Pa.Super. 168, 434 A.2d 183, 186 (1981) (visible intoxication "five or ten minutes" after leaving tavern was sufficient to submit the issue to a jury).