**McGEE STEEL COMPANY and Fireman's Fund Insurance Company, a foreign insurer, Appellants,**

v.

**The STATE of Alaska for the Use and Benefit of McDONALD INDUSTRIES ALASKA, INC., a Washington corporation, Appellee.**

No. S–865.

Supreme Court of Alaska.

Aug. 1, 1986.

Charles E. Cole and Stephan Williams, Law Offices of Charles E. Cole, Fairbanks, for appellants.

William K. McInerney, Jr., Barry G. Ziker and Peter S. Holmes, Cable, Barrett, Langenbach & McInerney, Seattle, Wash., and Charles D. Silvey, Schaible, Staley, DeLisio & Cook, Fairbanks, for appellee.

Before RABINOWITZ, C.J., BURKE, MATTHEWS, COMPTON and MOORE, JJ.

BURKE, Justice.

McGee Steel Company (McGee) and Fireman's Fund Insurance Company (Fireman's Fund) appeal an order granting summary judgment to McDonald Industries Alaska, Inc. (McDonald). The superior court ruled that a valid rental contract existed between McGee and McDonald and that McGee breached the contract by not paying the rental amount due.[1] The court granted McDonald unpaid rental and repair costs for a hydraulic crane. McGee and Fireman's Fund were held jointly and severally liable for the unpaid rental amount and the cost of repairing the crane, which was damaged while in McGee's possession. We hold that the superior court properly determined that the transaction was a rental. Because substantial factual issues exist, however, we remand to determine the cause of the boom failure, the amount of any damages due and the extent of Fireman's Fund's liability to McDonald.

## I. FACTS AND PROCEEDINGS BELOW

In 1983, Sam McGee, Jr., proprietor of McGee Steel,[2] arranged with McDonald for the use of a twelve-ton hydraulic crane on certain construction jobs. McGee went to Anchorage to pick up the crane from McDonald and signed two documents, a "Rental Agreement" and a "Purchase Op-

tion." These documents provided for a three month guaranteed rental period at $3,750 per month.

The boom on the crane failed a few days after McGee took possession. The failure occurred while McGee was using the crane at the Fairbanks International Airport Terminal Expansion Project, a public works project for which CJM Construction (CJM) was the prime contractor. CJM had obtained the payment and performance bonds required by AS 36.25.010[3] through its surety, Fireman's Fund. Following the boom failure, McDonald took the crane back to Anchorage for repairs. The crane was unavailable for use for approximately five to six weeks after its failure.

McGee refused to pay McDonald for any rental or repair costs. McDonald sued McGee and Fireman's Fund,[4] claiming in damages an amount equal to three months rent plus the full costs of parts and labor for repairing the boom. Judge James R. Blair granted McDonald's motion for summary judgment, holding McGee and Fireman's Fund liable for the amount claimed plus costs.

## II. TRIAL COURT'S GRANT OF SUMMARY JUDGMENT

When we review a grant of summary judgment, we must determine whether a genuine issue of material fact exists and whether the moving party deserves judgment as a matter of law. Civil Rule 56(c); *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). A material issue of fact exists where reasonable jurors could disagree on the resolution of a factual issue. *Air Van Lines v. Buster*, 673 P.2d 774, 778 (Alaska 1983);

---

1. Although the superior court did not make express findings of fact, it must have found that a rental contract existed, since judgment was granted for "unpaid rental."

2. For purposes of this opinion, "McGee" refers to both McGee Steel Company and Sam McGee, Jr.

3. This statute requires contractors awarded contracts for "the construction, alteration, or repair of a public building or public work of the state" to obtain "a payment bond ... for the protec-

tion of all persons who supply labor and material in the prosecution of the work provided for in the contract."

4. Fireman's Fund's potential liability is based on AS 36.25.020(a), the Alaska "Little Miller Act." This statute provides that any person who has furnished material for a bonded public project and has not been paid within ninety days may sue the surety who furnished the payment bond under AS 36.25.010.

*Green v. Northern Publishing,* 655 P.2d 736, 742–43 (Alaska 1982) *cert. denied,* 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact and its entitlement to judgment as a matter of law. *Howarth v. First National Bank of Anchorage,* 540 P.2d 486, 489 (Alaska 1975), *aff'd on rehearing,* 551 P.2d 934 (Alaska 1976).

### A. The Crane Transaction

■ The parties mainly dispute whether McGee's agreement with McDonald bound McGee to pay for a three month "guaranteed rental." We agree with the trial court that the transaction between McGee and McDonald included a guaranteed rental of the crane.

McGee signed a rental agreement and a purchase option for the crane. The purchase option incorporated the rental agreement and stated that the agreement included a "[g]uaranteed [r]ental [p]eriod of three (3) months." These documents, read together, comprise a contract which explicitly includes three months of guaranteed rental. Therefore, McGee is potentially liable for the three months rent whether the transaction is characterized as a lease or sale. Although the true nature of the transaction is only tangentially related to McGee's liability, it becomes important in determining Fireman's Fund's liability.

■ In determining the meaning of a contract, we will consider relevant extrinsic sources. *North Slope Borough v. Sohio Petroleum,* 585 P.2d 534, 540 n. 7 (Alaska 1978). To determine whether a particular transaction is a sale or lease, we must consider, in addition to pertinent documents, whether the purchase option price is nominal, the extent to which the lessee acquires an equity interest in the property, whether the "option" is unconditional, the past practices of the parties and the actual terms of the agreement. *Western Enterprises v. Arctic Office Machines,* 667 P.2d 1232, 1236 (Alaska 1983).

■ According to the terms of the purchase option, McGee could buy the crane only by notifying McDonald in writing of his desire to do so. McGee, therefore, was not committed to a purchase at all. McGee did not have any title or ownership rights and never acquired an equity interest in the crane.

McGee's intent to purchase the crane in the future is consistent with our determination that he agreed to a rental with a purchase option. Customers who lack immediate cash commonly rent a crane with a purchase option; this standard transaction was consistent with the industry custom. Finally, the express terms of the documents, including the bold-face headings, the reserved right of McDonald to repossess and retain all property interests, and the designations of the parties further support McDonald's contentions that there was a rental, not a sale.

Viewing the evidence in the light most favorable to McGee,[5] we conclude that, even if he intended to purchase the crane, he was renting it at the time of the damage. Therefore we affirm the superior court insofar as the order granting summary judgment was premised upon the conclusion that McGee rented the crane. Because the contract provided for three months guaranteed rental, McGee is potentially liable for the full rental amount.

Nevertheless, we agree with McGee that the trial court erroneously granted summary judgment on liability. Unresolved factual issues remain for trial.

### B. The Cause of the Boom Failure

■ One such issue is the cause of the boom failure. The parties dispute whether the crane was damaged as a result of some defect present when McGee acquired the crane or as a result of some subsequent negligent operation by McGee. In his deposition, McGee testified that "the boom was bad to start with." This is corroborated by McDonald's work order invoice. In describing the condition of the crane for

---

**5.** *See Sowash v. Garrett,* 630 P.2d 8, 11 (Alaska 1981); *Howarth,* 540 P.2d at 489.

the repair work, the invoice states that the rod, a section of the boom, was "badly pitted." McDonald, on the other hand, maintains that the boom failed because it was operated negligently by McGee.

The cause of the damage is material to the resolution of this action.[6] Only after a determination of the cause of the failure can any liability for the repair costs and rental time be assessed. The contract provides that McDonald, not McGee, is responsible for the repair costs and rental during the time the crane was unusable if the boom failed through no fault of McGee. Reasonable jurors could find that the crane was defective when McGee took possession. *See Green,* 655 P.2d at 742. The cause of the failure is a genuine issue of material fact which precludes summary judgment. *See Zeman,* 699 P.2d at 1280.

### C. *The Amount of Damages*

■ There also remains a factual dispute as to the amount of any damages to which McDonald is entitled. Thus the trial court erred in granting summary judgment to McDonald for full rental value and full repair costs.[7]

■ First, the evidence presented showed that McDonald had relet the crane after it was repaired, but before the end of McGee's three month rental period. These rental payments must offset the total amount of damages. *See Alaska Children's Services v. Smart,* 677 P.2d 899, 902 (Alaska 1984). If McDonald mitigated its damages, it cannot have a double recovery.

Second, the superior court awarded McDonald nearly the full cost of repairing the crane.[8] McGee argues that even if he is liable for repair costs because he was negligent, questions remain as to an appropriate amount. Evidence presented showed that certain parts of the crane could have been repaired, rather than replaced, and that repairs could have been made at a lower cost. The conflicting evidence regarding responsibility for the repair costs and the reasonableness of the claimed cost preclude summary judgment.

### D. *Fireman's Fund's Liability for Rental*

Another factual issue remains regarding Fireman's Fund's liability for rental and repair costs. As surety on the airport project, Fireman's Fund's liability derives from McGee's liability. Fireman's Fund argues that its status as a Little Miller Act surety should not automatically expose it to liability for the full amount of damages. We agree.

The purpose of the Little Miller Act[9] is "the protection of all persons who supply labor and material in the prosecution of the work provided for in the contract...." AS 36.25.010(a)(2).[10] As supplier of the crane used at the airport, McDonald is thus protected by the statute's express terms.

Fireman's Fund contends that a factual issue exists as to McDonald's good faith belief that the crane was to be used at the airport project. This is relevant, Fireman's Fund argues, because the purpose of public project payment bonds is to provide an incentive for suppliers; suppliers must, therefore, prove that they had a good faith, reasonable belief that the materials would be used on the bonded project. If they lacked this good faith belief, then the incen-

---

6. The terms of the rental contract provide that McGee is liable for repair costs in the event of damage, but if "the equipment fails to perform, through no fault of [McGee], [McDonald's] sole liability is limited to repair or replacement of parts or equipment ... [and] rental will be abated" for the time taken to repair the crane.

7. If McGee's negligence caused damage to the crane then $9375 may be the appropriate starting point for rental costs. This figure represents three months rental at $3750 per month ($11,250) minus McGee's deposit ($1875).

8. McDonald claimed $10,860.64 for repair costs, and the superior court awarded $10,660 on that claim.

9. *See supra* notes 3 & 4.

10. *Accord State ex rel. White v. Neal & Sons,* 489 P.2d 1016, 1020 (Alaska 1971) ("the purpose of [the statute] is to protect persons who furnish labor or material for a state public works project from the risks of nonpayment").

tive would be absent, and the surety should not be liable on the bond. Thus, Fireman's Fund concludes they would be absolved from liability if McDonald lacked a good faith belief.

However, McDonald's good faith is not relevant in this case. A "good faith" determination is necessary only where materials are diverted; it is not necessary where no dispute exists regarding where the materials were used. *Riley-Stabler Construction v. Westinghouse Electric,* 401 F.2d 526, 527 (5th Cir.1968); *see United States ex rel. Martin Steel Constructors v. Avanti Constructors,* 750 F.2d 759, 761 (9th Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 60, 88 L.Ed.2d 49 (1985).[11] Courts do not require a showing of good faith when materials are actually used at the bonded site because the statute expressly protects those suppliers. AS 36.-25.010. The issue of McDonald's state of mind in transferring the crane to McGee does not arise here because no one disputes that the crane was actually used at the airport project. Therefore, Fireman's Fund cannot be absolved from liability on this ground.

The *extent* of Fireman's Fund's liability is, however, a factual issue. While it cannot be liable for rental costs in an amount greater than McGee, Fireman's Fund may owe less than McGee since it is only responsible for equipment "substantially consumed" on the airport job. *See Ibex Industries v. Coast Line Waterproofing,* 563 F.Supp. 1142, 1145–46 (D.D.C. 1983). Its liability for rental is limited to the time period McGee actually used the crane on the airport project.

Fireman's Fund argues that if McGee purchased the crane instead of renting it, it would not be liable because a purchase is not within the purview of the Act. Since we have held that this transaction was a lease with an option to purchase, the crit-

ical question in terms of Fireman's Fund's liability is the extent to which the crane was "substantially consumed" on the job, not the distinction between sale and lease. Federal cases which interpret the Miller Act generally do distinguish a sale from a lease and also hold that equipment rentals are within the purview of a Miller Act payment bond because the value of the lease payment is substantially consumed in the project. *See, e.g., United States ex rel. Eddies Sales and Leasing v. Federal Insurance,* 634 F.2d 1050, 1052 (10th Cir. 1980). However, those cases also hold that the *purchase* of equipment is not covered because the seller is not supplying materials for consumption only on the bonded project. *Id., citing Continental Casualty v. Clarence L. Boyd Co.,* 140 F.2d 115 (10th Cir.1944).

We agree with such reasoning. Unless an item is furnished for and used on the bonded project, the surety should not be liable. However, characterizing a transaction as a lease or sale does not always determine whether particular equipment was substantially consumed on a particular project. Although a lease term may be evidence of the degree to which equipment was consumed, it may bear little relationship to the extent of use on the bonded project.

The record lacks evidence of the time McGee was to spend on the airport project after he rented the crane. Although this was a lease, Fireman's Fund's liability for the crane rental is limited to the amount that the crane would have been consumed on the project had it not failed. This can be determined by comparing the three month rental period to the duration of the airport project and ascertaining how long the crane was available for consumption. If, for example, the project terminated or McGee finished his subcontract three days into the three month term, then the

---

**11.** AS 36.25.010 is modeled after the federal Miller Act. Therefore, in resolving disputes brought under the Alaska Little Miller Act, we give more weight to principles derived from federal case law interpreting the Miller Act than to general common law principles governing debtor-creditor relations. *State ex rel. Palmer Supply v. Walsh & Co.,* 575 P.2d 1213, 1218 (Alaska 1978).

crane was not available for use on the airport project for the full three months, and the full three months rental costs should not be borne by Fireman's Fund.

We therefore remand for a determination of whether the crane's rental was "substantially consumed" on the project. In other words, whether the rental period was reasonably related to the time McGee would have used the crane on the airport project. That determination will govern the portion of McGee's potential damages for which Fireman's Fund is jointly liable.

### E. *Fireman's Fund's Liability for the Repair Costs*

Fireman's Fund argues that even if McGee is found liable for the costs of repair because he was negligent, it is not jointly liable because repair costs are not within the coverage of the bond. We agree. The superior court erred in holding Fireman's Fund liable for repair costs, and therefore we reverse summary judgment on this issue.

■ A Miller Act bond covers repair for incidental damages and ordinary wear and tear. *Continental Casualty*, 140 F.2d at 116. We distinguish incidental damage costs, which are within the bond coverage, from non-protected expenditures by looking to "the degree of expected consumption of the items on the particular job for which they were furnished." *United States ex rel. J.P. Byrne & Co. v. Fire Association of Philadelphia*, 260 F.2d 541, 544 (2d Cir. 1958). In *J.P. Byrne*, the cost of replacing truck tires was considered within the coverage of the bond because there was a reasonable expectation that the tires would be substantially used on the bonded project.[12] *Id.*

■ The question in this case is whether damage to the crane caused by any negligence of McGee[13] can be considered an "expected consumption" of the equipment on the job. We conclude that a subcontractor's negligent damage to a major piece of equipment was not an expense which Fireman's Fund should have expected. Therefore it is not liable for these repair costs.

McDonald argues that McGee was responsible for any required repairs under the provisions of the contract. It contends that case law imposes liability on Fireman's Fund because Fireman's Fund undertook the risk contemplated by McGee's contract. *See United States ex rel. Llewellyn Machinery v. National Surety Corp.*, 268 F.2d 610, 611 (5th Cir.), *cert. denied*, 361 U.S. 914, 80 S.Ct. 259, 4 L.Ed.2d 184 (1959). In *Llewellyn*, however, the court found the surety liable for the cost of lost equipment because it issued a bond on a general contract which had a provision for such a loss. *Id.* at 610. Here, Fireman's Fund could not have reasonably anticipated that its bond would cover the terms of a subcontractor's rental agreement. To hold it liable for repairs would "unduly enlarge" the scope of contemplated coverage.[14]

Summary judgment was proper only as to the determination that a lease existed with a three month guaranteed rental period. The grant of summary judgment is AFFIRMED in part, REVERSED and REMANDED in part for proceedings consistent with this opinion.

---

12. *See also Massachusetts Bonding & Ins. v. United States ex rel. Clarksdale Machinery*, 88 F.2d 388, 389 (5th Cir.1937) (frequent repairs to trucks, including new and rebuilt motors, were covered by the bond because the particular project work was so peculiar that it was reasonable and expected that the trucks would require those repairs).

13. McGee's possible negligence remains a question for determination on remand. *See supra* Section B.

14. *See Sim's Crane Service v. Reliance Insurance*, 667 F.2d 30, 32 (11th Cir.1982) (surety not liable for crane damage because it did not intend either to insure materialmen against the negligence of subcontractors or to underwrite a liability policy).