*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER.
Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts,
303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email
corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| UWE KALENKA, Personal | ) | |
| Representative of the Estate of | ) | Supreme Court No. S-13899 |
| ERIC W. KALENKA, | ) | |
| | ) | Superior Court No. 3AN-06-05528 CI |
| Appellant, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | No. 6805 – August 9, 2013 |
| JADON, INC., d/b/a CHILKOOT | ) | |
| CHARLIE'S, JACK ELIAS MORRELL, | ) | |
| and WILLIAM P. WASSILI, II, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third
Judicial District, Anchorage, John Suddock, Judge.

Appearances:  Kenneth P. Jacobus, Kenneth P. Jacobus, P.C.,
Anchorage, for Appellant.  Robert P. Blasco, Hoffman Silver
Gilman & Blasco, Juneau, for Appellee Jadon, Inc.  No
appearance by Appellees Jack Elias Morrell and William P.
Wassili, II.

Before:  Carpeneti, Chief Justice, Fabe, Winfree, Stowers,
and Maassen, Justices.

STOWERS, Justice.
MAASSEN, Justice, with whom WINFREE, Justice, joins, dissenting.

I.       INTRODUCTION

Jack Elias Morrell spent several hours in Chilkoot Charlie's bar and was

served alcoholic beverages. After Morrell left the bar, he and Eric Kalenka had a confrontation; Morrell produced a knife and fatally stabbed Kalenka. The personal representative of Kalenka's estate brought a wrongful death claim against Chilkoot Charlie's, alleging the bar had served alcohol to Morrell when he was a statutorily defined "drunken person" and therefore the bar was liable for Kalenka's death.

The issue before us is whether the Kalenka Estate raised a genuine issue of fact whether Morrell was a "drunken person" within the meaning of AS 04.16.030 when he was served alcohol at Chilkoot Charlie's. We hold that the Kalenka Estate has presented enough evidence to clear Alaska's low threshold for summary judgment and to support a reasonable inference that Morrell's intoxication was plain and easily observed while at the bar. We therefore reverse the superior court's decision granting summary judgment to Chilkoot Charlie's.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

In February 2004 Morrell and two cousins went to Chilkoot Charlie's in Anchorage. They were there for two to four hours, during which time Morrell was steadily drinking. Morrell stated that he did not have any drinks before arriving at Chilkoot Charlie's, nor did he have any drinks after leaving the bar.

After leaving Chilkoot Charlie's, possibly as late as 2:30 a.m., Morrell drove his cousin's vehicle to a nearby park and then to a Taco Bell. At about 3:15 a.m., in the Taco Bell drive-through, Morrell's vehicle struck Kalenka's vehicle's rear bumper. Kalenka got out of his car and a confrontation ensued; Morrell produced a knife and stabbed Kalenka multiple times. Kalenka died soon thereafter.

Two police officers who arrived at the scene later testified at Morrell's criminal trial that shortly after stabbing Kalenka, Morrell was uncooperative, slurred his speech, and smelled of alcohol. Claude Doucet, who witnessed the confrontation, also

testified at the criminal trial that Morrell appeared intoxicated, noting Morrell was loud, cursing, and stumbling. Morrell was estimated to have a blood alcohol level at the time of the incident as high as 0.27, the equivalent of having up to 13 to 14 typical alcoholic beverages in his system.

The general manager of Chilkoot Charlie's stated that none of the bar's employees remembered seeing Morrell that night. Doucet had also been at the bar for several hours that evening before the Taco Bell incident, and he stated he did not see Morrell at the bar and did not observe anyone "obviously intoxicated" being served at Chilkoot Charlie's. A Chilkoot Charlie's' employee recognized Morrell from his picture in the newspaper and stated that he had seen Morrell in the bar several times before February 2004: "On those occasions [Morrell] had been polite, soft spoken and mellow." Neither party presented any direct evidence of Morrell's actual appearance or conduct while at Chilkoot Charlie's, and, more specifically, presented no direct evidence of Morrell's appearance or conduct when served alcohol at Chilkoot Charlie's.

## B. Proceedings

In February 2006 Uwe Kalenka, the personal representative of Eric Kalenka's estate (Kalenka Estate), filed a wrongful death action against Jadon, Inc. (Chilkoot Charlie's).[1] The Kalenka Estate claimed Chilkoot Charlie's violated AS 04.16.030 by serving alcohol to Morrell when he was a drunken person and therefore was liable for Kalenka's death.[2]

---

[1] The Estate also named Morrell and William P. Wassili, II as defendants. Neither of these individuals have participated in this appeal.

[2] AS 04.16.030 prohibits a licensed provider with criminal negligence from selling or giving alcohol to a drunken person or allowing a drunken person to enter and remain on licensed premises.

(continued...)

In February 2010 Chilkoot Charlie's moved for summary judgment on two grounds: (1) there was no evidence that Chilkoot Charlie's with criminal negligence provided Morrell alcohol when he was a "drunken person"; and (2) Morrell's stabbing of Kalenka was a sufficient superseding cause to discharge Chilkoot Charlie's of any liability for Kalenka's death. The Kalenka Estate opposed the motion, presenting the expert report of Elizabeth Trendowski.[3]

The Trendowski report's purpose "was to determine if the action/inaction of Chilkoot Charlie's['] employees and management was negligent and violated the Alaska state liquor code by permitting alcohol beverages to be sold or given to a visibly intoxicated person." Trendowski relied on: (1) a forensic toxicology report concluding Morrell "was under the influence of a combination of alcohol and energy drinks at the time of the stabbing"; (2) the police officers' testimony at Morrell's criminal trial describing Morrell's "actions and demeanor at the scene" after they arrived; and (3)

_____

[2]    (...continued)
AS 04.21.020(a), the dram shop immunity provision, reads in pertinent part:

> [A] person who provides alcoholic beverages to another person may not be held civilly liable for injuries resulting from the intoxication of that person unless the person who provides the alcoholic beverages holds a license . . . and . . .

> (2) the alcoholic beverages are provided to a drunken person in violation of AS 04.16.030.

[3]    The report is not a sworn statement, nor is it attached to a validly sworn affidavit. *See Maines v. Kenworth Alaska, Inc.*, 155 P.3d 318, 323-24 (Alaska 2007) (concluding the superior court did not abuse its discretion in excluding unsigned and unsworn declaration from its consideration of summary judgment, as assertions of fact in unverified pleadings and memoranda cannot be relied on in denying motion for summary judgment). But Chilkoot Charlie's did not raise an appropriate objection in the superior court or this court, and the report was and will be considered on its merits.

Doucet's testimony at the criminal trial regarding his observations of Morrell at Taco Bell.[4] The toxicology report extrapolated Morrell's blood alcohol concentration to be between 0.11 and 0.27 at 3:15 a.m., the time of the stabbing, and estimated Morrell had consumed between seven and 18 drinks. In addition to the toxicological findings Trendowski relied upon, the Kalenka Estate submitted toxicologist Joel R. Milzoff's report extrapolating the same blood-alcohol concentration but estimating Morrell consumed between 7.5 and 19.5 drinks.

After discussing Alaska's statutory requirements for a liquor licensee and employee alcohol-server education, Trendowski's report stated, "Morrell's aberrant behavior was a direct result of his intoxication and should have reasonably been observed by a certified . . . bartender, server or bouncer." The report stated that based on the toxicology report, "[c]ertified . . . servers should have recognized the effect . . . the excessive amount of vodka and [energy drink] was having on Mr. Morrell and cut him off from consuming any more alcohol."

Trendowski's report concluded that "Morrell more likely than not exhibited

---

[4]    The criminal trial testimony was hearsay as to Chilkoot Charlie's. *See* Alaska R. Evid. 801(c) ("Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). When its summary judgment motion was being considered, Chilkoot Charlie's had a pending motion challenging the admissibility of such testimony at trial, but an expert's opinion testimony can rely on inadmissible evidence. *See* Alaska R. Evid. 703 (providing that "facts or data upon which an expert bases an opinion" do not need to be admissible, "but must be of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject"); *see also Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1217 (Alaska 1991) (stating hearsay can be a permissible basis of expert's opinion testimony "provided the reasonable reliance test is satisfied" (citing *Norris v. Gatts*, 738 P.2d 344, 349 (Alaska 1987))). Chilkoot Charlie's did not raise an objection in the superior court regarding Trendowski's reliance on hearsay evidence.

visible signs of intoxication while on the premises of Chilkoot Charlie's. Based on the testimony of the independent witnesses at Taco Bell, Mr. Morrell was acting irrational, angry, and was uncooperative with both the victim and law enforcement." The report described Morrell's actions at Taco Bell as "visible and obvious signs of intoxication," and noted that "[a] reasonably attentive bartender or server would have observed similar signs at the bar and stopped the service of alcohol. The signs of intoxication observed shortly after Mr. Morrell left Chilkoot Charlie's would have been obvious to any alcohol server; particularly one who has been . . . trained."

Although Trendowski's report conceded that behavioral changes associated with intoxication "do not all appear simultaneously," it asserted that "[t]hey appear in a progressive manner" and "[t]here was plenty of opportunity for any attentive server, bartender or bouncer to observe some or all of [his] behaviors that indicated Mr. Morrell was obviously and visibly intoxicated." Trendowski's report ultimately concluded that Chilkoot Charlie's: (1) failed to monitor the number of drinks served to Morrell; (2) failed to observe and recognize his signs of intoxication; and (3) failed to stop serving alcohol to a drunken person.

The superior court granted Chilkoot Charlie's' summary judgment motion on the basis that there was no admissible evidence its employees acted with criminal negligence as to Morrell. The court stated Trendowski's report "implicate[d] the Court in such a degree of speculation" that no jury could properly infer Morrell was observably drunk at the bar.

The Kalenka Estate appeals the superior court's grant of summary judgment dismissing its suit against Chilkoot Charlie's.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo.[5] We review the facts in the light most favorable to the non-moving party and draw all factual inferences in the non-moving party's favor.[6] A grant of summary judgment is affirmed "when there are no genuine issues of material fact, and the prevailing party . . . [is] entitled to judgment as a matter of law."[7] "A genuine issue of material fact exists where reasonable jurors could disagree on the resolution of a factual issue."[8] Whether the evidence presented a genuine issue of material fact is a question of law that we independently review.[9]

## IV. DISCUSSION

Alaska's dram shop statute immunizes a licensed alcohol provider from civil liability for damages caused by a patron's intoxication unless the licensee provided alcohol to the patron when that patron was a "drunken person."[10] A drunken person is "a person whose conduct is substantially and visibly impaired as a result of alcohol

---

[5]     *Fraternal Order of Eagles v. City & Borough of Juneau*, 254 P.3d 348, 352 (Alaska 2011) (citing *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)).

[6]     *Id.* (quoting *Rockstad*, 113 P.3d at 1219).

[7]     *Id.* (quoting *Rockstad*, 113 P.3d at 1219).

[8]     *Burnett v. Covell*, 191 P.3d 985, 990 (Alaska 2008) (citing *McGee Steel Co. v. State ex rel McDonald Indus. Alaska, Inc.*, 723 P.2d 611, 614 (Alaska 1986)).

[9]     *Olson v. Teck Cominco Alaska, Inc.*, 144 P.3d 459, 463 (Alaska 2006) (citing *French v. Jadon, Inc.*, 911 P.2d 20, 24 (Alaska 1996)).

[10]     *See* AS 04.21.020(a)(2) (immunizing alcohol provider from civil liability unless alcoholic beverages provided to drunken person); *see also* AS 04.16.030 (prohibiting alcohol provider with criminal negligence from selling or giving alcohol to drunken person).

ingestion."[11] The statutory definition of "drunken person" includes two elements: (1) substantial impairment of the person's physical or mental conduct; and (2) that such impairment be "plain and easily observed or discovered."[12] Thus, Chilkoot Charlie's' potential liability depends on whether it served Morrell drinks when he was visibly impaired through intoxication.[13]

The superior court granted summary judgment on the basis that the Trendowski report failed to raise a genuine issue of fact whether Chilkoot Charlie's served Morrell alcohol when he was a statutorily defined "drunken person." There is no direct evidence of Morrell's appearance or conduct at Chilkoot Charlie's, and the superior court stated that although Morrell may have been intoxicated "there still has to be a proper inference [regarding visible impairment] that the jury can draw, rather than pure speculation, and . . . [the Trendowski report is] in the land of pure speculation here."

The Kalenka Estate argues that summary judgment was improper because evidence of Morrell's appearance and conduct at Taco Bell can be "extrapolated by the experts back to the time that Morrell was at Chilkoot Charlie's, and what his behavior

---

[11]   *Gonzales v. Safeway Stores, Inc.*, 882 P.2d 389, 393 (Alaska 1994) (citing AS 04.21.080(b)(8)).

[12]   AS 04.21.080(b)(8) provides:

> "drunken person" means a person whose physical or mental conduct is substantially impaired as a result of the introduction of an alcoholic beverage into the person's body and who exhibits those plain and easily observed or discovered outward manifestations of behavior commonly known to be produced by the overconsumption of alcoholic beverages.

[13]   *See Gonzales*, 882 P.2d at 395 ("The question of [the liquor store's] 'criminal negligence' is dependent on whether [the purchaser] was a drunken person.").

would have been like [there]."  The Kalenka Estate contends that based on the observations of Morrell at Taco Bell and the estimate that Morrell consumed between 7.5 and 19.5 drinks before the incident, Trendowski correctly concluded Morrell was observably impaired earlier at Chilkoot Charlie's.  Chilkoot Charlie's responds that the superior court properly granted summary judgment because there was no factual basis for Trendowski's conclusions about Morrell's appearance or conduct at the bar.  While conceding Morrell likely was legally intoxicated at the bar, Chilkoot Charlie's contends the proper question is whether he was a "drunken person" as defined in AS 04.21.080(b)(8).

Summary judgment should only be granted if the non-moving party has not raised a genuine issue of material fact.[14]  This is not a stringent standard.[15]  When deciding whether there is a genuine issue of material fact, we must draw all reasonable inferences from the evidence in favor of the non-moving party.[16]  "A genuine issue of material fact exists where reasonable jurors could disagree on the resolution of a factual issue."[17]  We conclude that reasonable jurors could disagree about whether Chilkoot Charlie's served Morrell while he was a statutorily defined "drunken person."

In *Kavorkian v. Tommy's Elbow Room*, we examined an action under the

---

**14**     *See Price v. Unisea, Inc.*, 289 P.3d 914, 918 (Alaska 2012) (quoting *Dominic Wenzell, D.M.D. P.C. v. Ingrim*, 228 P.3d 103, 106 (Alaska 2010)).

**15**     *See Hammond v. State, Dep't of Transp. & Pub. Facilities*, 107 P.3d 871, 881 (Alaska 2005) ("It is well established that 'the evidentiary threshold necessary to preclude an entry of summary judgment is low.' ") (quoting *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1032 (Alaska 2002)).

**16**     *See Price*, 289 P.3d at 918 (quoting *Dominic Wenzell, D.M.D. P.C.*, 228 P.3d at 106).

**17**     *Burnett v. Covell*, 191 P.3d 985, 990 (Alaska 2008) (citing *McGee Steel Co. v. State ex rel McDonald Indus. Alaska, Inc.*, 723 P.2d 611, 614 (Alaska 1986)).

dram shop statute.[18] The jury in that case heard conflicting testimony about whether the patron was visibly intoxicated while served at the bar, and we noted that "[t]estimony concerning [the patron's] condition shortly before and after his visit to [the bar] is circumstantially relevant to the determination of [his] condition at [the bar]."[19]

Here, the Kalenka Estate has presented several pieces of evidence concerning Morrell's condition both during and shortly after his visit to the bar, which, when viewed in a light most favorable to the Estate,[20] and drawing all inferences in favor of the Estate,[21] together raise a genuine issue of material fact, or to put it another way, support a reasonable inference that Morrell was visibly impaired through intoxication when he was served at Chilkoot Charlie's: (1) Morrell was at Chilkoot Charlie's for two to four hours, during which time he was steadily drinking; (2) Morrell admitted he consumed no alcohol before arriving at Chilkoot Charlie's; (3) Morrell was served and consumed as many as 18 or 19 alcoholic drinks while at the bar;[22] (4) Morrell consumed no additional alcohol after leaving Chilkoot Charlie's; (5) approximately 45 minutes after leaving Chilkoot Charlie's, Morrell displayed "visible and obvious signs of intoxication;"[23] and (6) Morrell was estimated to have a blood-alcohol level at the time

---

[18]    694 P.2d 160 (Alaska 1985).

[19]    *Id.* at 165 n.9.

[20]    *Fraternal Order of Eagles v. City & Borough of Juneau*, 254 P.3d 348, 352 (Alaska 2011) (quoting *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)).

[21]    *Id.* (quoting *Rockstad*, 113 P.3d at 1219).

[22]    Morrell stated that he consumed both beer and "mandarin Red Bull," a combination of vodka and an energy drink, at the bar.

[23]    Witnesses testified that Morrell was emotional and uncooperative toward police commands and instructions and that he was stumbling and slurring his speech.

of the altercation as high as 0.27, the equivalent of having 13 to 14 typical alcoholic beverages in his system. Thus, evaluating all of this factual evidence in a light most favorable to the Kalenka Estate, before the stabbing Morrell consumed alcohol only at Chilkoot Charlie's, he was at Chilkoot Charlie's two to four hours, he drank about 13-18 drinks in that time period, he was observed to be visibly and obviously impaired by intoxication about 45 minutes after he left, and his blood alcohol at that 45-minute mark was .027. These facts are sufficient to raise a genuine issue of fact whether Morrell was impaired by intoxication when he was served his last drink at Chilkoot Charlie's.

This conclusion is consistent with decisions from a number of states holding that summary judgment is inappropriate even without direct evidence of intoxication at the time of service where there is evidence that the patron was served alcohol and was visibly intoxicated soon after. In *Smith v. Shagnasty's*, the Iowa Supreme Court noted the chance that the last drink pushed the patron over the brink into obvious intoxication is fairly small, and thus held that it would be reasonable for a jury to conclude that the patron was obviously intoxicated when she was served that last drink:

> In affording [the plaintiff] all legitimate inferences, we simply recognize that if (1) one beer does not a drunk make, (2) [the bar] sold and served [the patron] a beer, and (3) [the patron] was shortly thereafter in a visibly intoxicated condition, then it stands to reason that (4) [the patron] was also noticeably intoxicated at the time of service. Moreover, if a patron was likely visibly intoxicated at the time of service, a jury could find (5) the bar knew or, at the very least, should have known of her intoxication.[24]

The logic in that case is particularly compelling where, as here, there is evidence that the patron (Morrell) had been drinking a large number of alcoholic beverages steadily for

---

[24]    688 N.W.2d 67, 75 (Iowa 2004).

some time. Morrell admitted he drank no alcohol before or after he visited the bar. Further, there was evidence that shortly after he departed the bar, Morrell had a very high blood alcohol content and was observed to be a "drunken person." Accordingly, a jury could reasonably infer that Morrell was exhibiting obvious signs of intoxication when he was served his last drink of the night at Chilkoot Charlie's.

In *Fairbanks v. J.B. McLoughlin Co.*, the Washington Supreme Court held that direct evidence of obvious intoxication at the time of service is not necessary to survive summary judgment:

> A police officer's subjective observation that the employee was obviously intoxicated shortly after leaving the banquet may raise an inference that she was obviously intoxicated when the employer served her, provided that the employee did not consume any alcohol after leaving the banquet and provided that no time remains unaccounted for between the banquet and the subsequent observation.[25]

Courts of appeal in Indiana and Pennsylvania have reached similar conclusions. In Indiana, the court of appeals held that "the fact that [the bar] served even one beer to a person who shortly thereafter was in a state of serious intoxication gives rise to a question of fact whether [the person] was visibly intoxicated at the time."[26] A Pennsylvania court was confronted with a similar question.[27] Evidence presented at trial established that the patron had consumed a substantial amount of alcohol before being served his last drink at the bar, that he drove erratically upon leaving the bar, that he

---

[25]    929 P.2d 433, 436 (Wash. 1997) (citing *Dickinson v. Edwards*, 716 P.2d 814 (Wash. 1986)).

[26]    *Ward v. D & A Enters. of Clark Cnty., Inc.*, 714 N.E.2d 728, 730 (Ind. App. 1999).

[27]    *See Couts v. Ghion*, 421 A.2d 1184 (Pa. Super. Ct. 1980).

appeared intoxicated to the investigating police officer, and that his blood-alcohol content was elevated.[28] The court held that "[d]espite the lack of direct evidence bearing on [the patron's] condition when he was served his last drink, we think that the jury could have reasonably concluded that he was visibly intoxicated at that time."[29]

In all of these cases, direct testimony about a patron's behavior when the patron was served was not necessary to survive summary judgment. Given this authority from other states and our own low summary judgment threshold, the Kalenka Estate has presented enough evidence to survive summary judgment.

## V.    CONCLUSION

For the reasons discussed, we REVERSE the superior court's grant of summary judgment dismissing the Kalenka Estate's dram shop claim against Chilkoot Charlie's.

---

[28]    *Id.* at 1188.

[29]    *Id.*; *see also Fandozzi v. Kelly Hotel, Inc.*, 711 A.2d 524, 527 (Pa. Super. Ct. 1998) ("[W]e conclude that a plaintiff can prove dram shop liability in the absence of direct eyewitness evidence that an individual was served alcohol at a time when he or she was visibly intoxicated."); *Speicher v. Reda*, 434 A.2d 183, 186 (Pa. Super. Ct. 1981) (visible intoxication "five or ten minutes" after leaving tavern was sufficient to submit the issue to a jury).

MAASSEN, Justice, with whom WINFREE, Justice, joins, dissenting.

I would affirm the superior court's grant of summary judgment. Our threshold for defeating summary judgment is indeed low, as today's opinion points out,[1] but it is still a threshold that can be crossed only with evidence. The Kalenka Estate's liability claim requires the jury not only to consider the evidence and draw reasonable inferences from it, but also to speculate that certain interactions occurred and then draw inferences from those imagined events. This travels too far into the realm of speculation.

Dram shop liability under Alaska law depends on proof of intoxication that is or should be apparent to the server. A licensee is immune from civil liability for injuries resulting from intoxication unless "the alcoholic beverages are provided to a drunken person in violation of AS 04.16.030."[2] Alaska Statute 04.16.030 is violated only if, as relevant here, the licensee "sell[s], give[s], or barter[s] alcoholic beverages to a drunken person" and does so "with criminal negligence."[3] "Criminal negligence" with respect to a particular circumstance means that "the person fails to perceive a substantial and unjustifiable risk that . . . the circumstance exists; the risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."[4] The legislature has expounded on the standard of care in these cases: it requires that servers "use their powers of observation to *see that which can easily be seen*, and *hear that which can easily be heard*, *under the existing conditions and circumstances* and to determine whether the person is so far under the influence of intoxicating beverages that his

---

[1]     Slip Op. at 13.

[2]     AS 04.21.020(a)(2).

[3]     AS 04.16.030(a)(1).

[4]     AS 04.21.080(a)(1).

conduct and demeanor are drunken."[5]  A "drunken person" is one "whose physical or mental conduct is substantially impaired as a result of the introduction of an alcoholic beverage into the person's body and who *exhibits those plain and easily observed or discovered outward manifestations of behavior* commonly known to be produced by the overconsumption of alcoholic beverages."[6]

In short, liability under the dram shop act requires not just that the licensee serve an intoxicated person; there must also be evidence that the licensee, in a gross deviation from a reasonable standard of care, failed to perceive "outward manifestations" of intoxication that were being "exhibit[ed]" and were "plain and easily observed or discovered."  I have no quarrel in this case with the Estate's reliance on circumstantial evidence to show that Jack Morrell was intoxicated when he was served at Chilkoot Charlie's.  What the Estate lacked, however, was any evidence of the equally critical part of its claim:  that at the time Chilkoot Charlie's served Morrell, Morrell "exhibit[ed]" the "outward manifestations" of intoxication such that they were or should have been "plain and easily observed or discovered" by the person serving him.  The Estate can only ask the jury to imagine the encounters in which this observation or discovery could have occurred, and the court's decision today unfortunately invites that speculation.

The opinion identifies six pieces of evidence that it concludes "support the reasonable inference that Morrell was visibly impaired through intoxication when he was served at Chilkoot Charlie's":  (1) that he drank steadily at the bar for two to four hours; (2) that he had consumed no alcohol before arriving at the bar; (3) that he consumed as many as 18 or 19 drinks while at the bar; (4) that he did not consume any more alcohol

---

[5]    *Williford v. L.J. Carr Invs., Inc.*, 783 P.2d 235, 239 n.12 (Alaska 1989) (emphasis added) (quoting Senate Journal Supp. No. 23 at 15-16, 1980 Senate Journal 661).

[6]    AS 04.21.080(b)(8) (emphasis added).

after leaving the bar; (5) that he displayed "visible and obvious signs of intoxication" about 45 minutes after leaving the bar; and (6) that at the time of the altercation he had a blood alcohol content of about 0.27.[7]  This boils down to proof of only two relevant points:  that Morrell was highly intoxicated at the bar (items (1)-(4) and (6)), and that he exhibited the outward manifestations of his intoxication about 45 minutes later during a fight and a highly charged encounter with police (item (5)).  Even taken together, this evidence cannot prove Chilkoot Charlie's' liability under the dram shop act, because that liability depends on proof not just that Morrell was intoxicated at the bar but that he *exhibited the outward manifestations of intoxication* while he was being served there.

What were the "visible and obvious signs of intoxication" that the court seeks to pull back in time 45 minutes from when they were actually observed, in order to posit that Chilkoot Charlie's' servers may have grossly deviated from a reasonable standard of care in failing to notice them?  According to the court, these signs include "that Morrell was emotional and uncooperative toward police commands and instructions and that he was stumbling and slurring his speech."[8]  But these symptoms of intoxication were entirely reactive and specific to the unfortunate context of Morrell's altercation with Eric Kalenka and its aftermath.  There is no evidence that any such prompt occurred while Morrell was at Chilkoot Charlie's; there is no evidence that he had occasion to be "emotional and uncooperative" toward anybody.  Indeed, as the court also notes, the only eyewitness testimony about Morrell's *usual* appearance at Chilkoot Charlie's was that he was "polite, soft spoken and mellow."[9]

Nor is there any evidence that Morrell had occasion at Chilkoot Charlie's

---

[7]    Slip Op. at 11.

[8]    Slip Op. at 10, n.23.

[9]    Slip Op. at 3.

to display the other "visible and obvious signs of intoxication" on which the court relies: "stumbling and slurring his speech." First, there is no evidence that Morrell got out of his chair even once while at the bar so as to display "stumbling." It can certainly be inferred, without direct evidence, that he walked into the bar — before he had had anything to drink — and that he walked out again — when any symptoms he displayed could no longer deter Chilkoot Charlie's from serving him. But any rambles around the bar in between times are purely speculative.[10] Nor is there any evidence that Morrell ever spoke in the presence of a server, so as to exhibit the "slurring of speech" on which the court also relies.[11] I do not believe that the jury can reasonably "infer" that such a conversation occurred, "infer" that it occurred *after* Morrell had become visibly intoxicated, and "infer" that in this hypothetical conversation Morrell slurred his speech in such a way that any server who failed to notice it was grossly deviating from a reasonable-person standard of care. Any such chain of conclusions is pure speculation, not reasonable inferences from the evidence.

While I certainly agree that the circumstantial evidence on which the court relies is *relevant* to the question of whether Morrell was visibly intoxicated while at the

---

[10] A jury could perhaps infer that Morrell would have traveled to the men's room at least once during the hours he spent at Chilkoot Charlie's. But with that reasonable inference in hand a jury would have to pile on others: that Morrell went to the men's room after becoming visibly intoxicated and not just before; that he exhibited the outward manifestations of intoxication while en route; and that, in what was apparently "a capacity crowd" for Mardi Gras night, the servers' failure to observe Morrell's intoxicated state during his hypothetical trip to the men's room was a gross deviation from a reasonable-person standard of care.

[11] As the superior court correctly observed at the summary judgment hearing, "There's no evidence that [Morrell] was incapable of sitting at a table and quietly saying to a server[, 'A]nother beer please.['] That's all you have to say to a server to get that beer coming, and there's zero testimony that he was so intoxicated that he couldn't sit and say[, 'A]nother beer.' "

bar, it is not enough on which to base a finding of liability. In *Kavorkian v. Tommy's Elbow Room, Inc.*, as the court recites, we noted that "[t]estimony concerning [the patron's] condition shortly before and after his visit to [the bar] is circumstantially relevant to the determination of [his] condition at [the bar]."[12] But we also mentioned testimony that the patron had "experienced difficulty walking to the foosball table once inside [the bar]."[13] An off-duty waitress who witnessed the patron's condition at the bar testified that he was "obviously drunk," though a bartender and a customer testified that he was not.[14] There was thus direct evidence in *Kavorkian* that has no counterpart here.

It bears noting that such evidence may well have been available. The superior court, in its oral remarks during the summary judgment hearing, noted that "there's zero testimony in the case about where Morrell went [in the bar], where he sat, how he got served, who served him, what he did, how he behaved in the bar," even though the court had granted a continuance of trial "in part to give [the Estate] an opportunity to depose Mr. Morrell," an opportunity the Estate inexplicably passed up.[15] Morrell was participating in the case and apparently available to be deposed. Even absent other, more disinterested eyewitness testimony, reasonable inferences about whether Morrell exhibited the outward manifestations of intoxication could have been

---

[12]    Slip Op. at 9-10 (quoting *Kavorkian v. Tommy's Elbow Room, Inc.*, 694 P.2d 160, 165 n.9 (Alaska 1985), *rev'd on other grounds on reh'g*, 711 P.2d 521 (Alaska 1985)).

[13]    *Kavorkian*, 694 P.2d at 165.

[14]    *Id.* & nn.12-13.

[15]    The court remarked, "I must say I'm floored that [the Estate's counsel] did not take [Morrell's] deposition, because the Court threw him a lifeline to do so and virtually told him that the Court doesn't think you can make a case without Mr. Morrell giving you some information that gets you into play here, and for whatever reason . . . [the Estate's counsel] didn't want to go there."

developed from his deposition testimony about his interactions and movements in the bar. I am not proposing any sort of insurmountable evidentiary hurdle when I call the Estate's case speculative as it stands.

The court today relies on cases from other jurisdictions that similarly allow juries to speculate, on the basis of blood-alcohol evidence and observations made later, about whether the driver's intoxication was manifest at the bar. But cases run the gamut when it comes to determining the critical point at which such evidence is deemed sufficient. In *Reed v. Breton*, for example, the Michigan Supreme Court rejected the plaintiffs' argument that the driver's blood alcohol level, the amount of time he spent drinking, and other circumstantial evidence could raise an issue of fact as to whether he was *visibly* impaired while drinking at the defendant establishment, in the face of eyewitness testimony that he was not.[16] In *Alaniz v. Rebello Food & Beverage, L.L.C.*, a Texas appellate court held that a videotape and eyewitness testimony demonstrating the driver's obvious intoxication at a convenience store 50 to 55 minutes after he left the bar "does not establish that [the driver] was obviously intoxicated while being served at [the bar], and any inferences regarding his obvious intoxication while there would amount to no more than mere speculation."[17] In *Owens v. Hooters Restaurant*, the

---

[16]    718 N.W.2d 770, 776-77 (Mich. 2006). *Reed* involved a claim brought against the second-to-last bar to serve the intoxicated driver; such bars enjoy a rebuttable presumption against dram shop liability under Michigan law. *Id.* at 774. Although the court held that the presumption could only be defeated by "clear and convincing evidence," it also held that "the proofs presented [in the case before it] could not even meet the competent and credible standard for rebutting the presumption to show service to a visibly intoxicated person." *Id.* at 775-76.

[17]    165 S.W.3d 7, 13-14 (Tex. App. 2005); *see also J.D. Abrams, Inc. v. McIver*, 966 S.W.2d 87, 91 (Tex. App. 1998) (holding that evidence of driver's alcohol consumption and his obvious intoxication at the accident scene an hour after he left the
(continued...)

Alabama Supreme Court affirmed without opinion the grant of summary judgment to the defendant in a dram shop case in which the driver was in an accident just six-tenths of a mile away from the restaurant, where he was found to have a blood-alcohol content of .16 and "was slurring his speech and staggering."[18] Chief Justice Cobb, concurring in the per curiam affirmance, explained why she found the plaintiff's evidence insufficient:

> The evidence in this case strongly supports the conclusion that [the driver] was intoxicated at the scene of the accident; it might even be inferable that [the driver] was intoxicated when he left the Hooters restaurant. However, the record contains no evidence that would support an inference that any employee of Hooters served [the driver] alcohol while he was visibly intoxicated.[19]

And in *Sorensen v. Denny Nash Inc.*, a New York court rejected, as insufficient to defeat summary judgment, an inference "that because [the driver] consumed a certain amount of alcohol throughout the evening and early morning hours and exhibited signs of intoxication at 3:15 A.M., he must have been intoxicated during a time period three hours before and, more importantly, appeared so."[20] I find these cases more persuasive than the ones cited in the opinion.

In short, I do not believe the Kalenka Estate in this case presented evidence on which a reasonable jury could decide the dram shop claim in its favor. In the absence of such evidence, a verdict for the Estate could only be based on inferences about

---

[17]    (...continued)
bar were insufficient in the absence of "any testimony that [the driver] was 'obviously intoxicated' . . . at the time he was provided alcohol at [the defendant bars] . . . or that such condition was then 'apparent' to the provider").

[18]    41 So. 3d 743, 743 (Ala. 2009) (Cobb, C.J., concurring).

[19]    *Id.* at 744 (Cobb, C.J., concurring).

[20]    671 N.Y.S.2d 559, 561 (N.Y. App. Div. 1998).

Morrell's behavior during interactions that themselves were imagined, not inferred.  I would affirm the superior court's grant of summary judgment to Chilkoot Charlie's.